Appeal of The Reading Fire Insurance and Trust Company, Guardian of Charles B. Riegel.

1. Cohabitation and reputation alone are not marriage. They are merely circumstances from which a marriage may sometimes be presumed. This presumption may, however, be rebutted by other facts and circumstances.

2. When the relation between a man and woman living together is illicit in its commencement, it is presumed to continue so until a changed relation is proved. Without proof of a subsequent actual marriage it will not be presumed, from continued cohabitation and reputation, of a relation between them which was of illicit origin.

3. Hunt's Appeal, 5 Norris, 294, followed.

March 4th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Berks county :* Of January Term, 1886, No. 283.

Appeal of the Reading Fire Insurance and Trust Company, guardian of Charles B. Riegel, a minor child of Jacob R. Riegel, deceased, from the decree of the Orphans' Court of Berks county, SCHWARTZ, P. J., dismissing the exceptions filed by the said appellant to the $300 exemption appraisement of Ellen Riegel, who claims to be the widow of said Jacob R. Riegel, deceased, and confirming absolutely said appraisement.

The exception of the appellant to said appraisement was that the said Ellen Riegel is not the widow of Charles B. Riegel, the decedent. The facts of the case sufficiently appear from the opinion of the Supreme Court.

The appellant took this appeal, assigning for error the action of the Court in dismissing said exception, and confirming said appraisement.

*Isaac Hiester* (*Bland & Dettra* with him), for appellant.—Ellen Riegel never was the wife of the decedent, but she was during her cohabitation with him the wife of Jeremiah Ribble.

The finding of facts by an auditing judge will not be set aside except for plain error, and when the testimony is conflicting, this Court will not reverse. But this Court has uniformly held that when the questions decided grow out of inferences from clearly proved facts or conclusions derived from reasoning, the report has not the same weight: Sproull's Appeal, 71 Pa. St., 137; Phillip's Appeal, 68 Id., 130; Kutz's Appeal, 100 Id., 75. The question, therefore, is whether a marriage should be inferred from the facts shown.

Marriage is regarded in this State as a civil contract, and is provable in all civil actions by cohabitation, reputation, acknowledgment of the parties, reception of the family, and any other circumstances from which it may be inferred: Lehigh Valley R. R. Co. *v.* Hall, 61 Pa. St., 361; Senser *v.* Bower, 1 P. & W., 450; Thorndell *v.* Morrison, 25 Pa. St., 326; Hanna *v.* Phillips, 1 Gr., 253; Guardians of the Poor *v.* Nathans, 2 Brewst., 149; Physick's Estate, 2 Id., 179; Bicking's Appeal, Id., 202; Chambers *v.* Dickson, 2 S. & R., 475; Vincent's Appeal, 60 Pa. St., 228.

"The fact that a woman cohabited with and spoke of a man as her husband is sufficient to bar her claim to the estate of another man whom she claimed to have married during the lifetime of the former:" Adose *v.* Fossit, 1 Pears., 304; Thompson *v.* Thompson, 10 Phila., 131; Kenley *v.* Kenley, 2 Y., 207; Heffner *v.* Heffner, 23 Pa. St., 104; Griffith *v.* Swith, 1 Clark, 479.

"Cohabitation and reputation are not marriage, but only circumstances from which a marriage may be presumed, and this presumption may be rebutted, and wholly disappears in the face of proof that there has been no marriage in fact."

"A relation between a man and a woman, which was illicit at the commencement, is presumed to continue so until proof of change, and a marriage therefore will not be presumed from cohabitation and reputation where the relation between the parties was of an illicit origin, in the absence of proof of a subsequent actual marriage:" Hunt's Appeal, 5 N., 294.

"A man may live with his kept mistress in such a way as to create a kind of repute of marriage among some persons. He may even, to gratify her, allow himself to be held out, or hold himself out, to her friends and acquaintances as her husband; may recognize the fruit of the connection as his children, and manifest affection and tenderness towards them, and yet the evidence may fall far short of that which ought to satisfy the mind that there was an actual agreement to form the relation of husband and wife:" Per SHARSWOOD, J., Bickin's Appeal, 2 Brewst., 202; see also Yardley's Estate, 75 Pa. St., 207; Hill *v.* Hill, 32 Id., 511; Brinckle *v.* Brinckle, 12 Phila., 232; Tholey's Estate, 93 Pa. St., 36.

*Ruhl* (*H. O. Schrader & Ermentrout* with him), for appellees.—Ellen Riegel was the wife of the decedent. The law favors the legality of marriage, and will not uselessly bastardize issue: Vincent's Appeal, 10 P. F. S., 246.

"Marriage may be proved, in civil cases, other than actions for seduction, by reputation, declarations, and conduct of the parties, and other circumstances usually accompanying that

relation.  It is competent to show their conversation, address-
ing each other as man and wife ; their appearing in respectable
society, and being there received as man and wife ; the assump-
tion by the woman of the name of the man.  Their cohabita-
tion also as man and wife is presumed to be lawful until the
contrary appears.  The like inference is drawn from the bap-
tism, acknowledgment and treatment of their children by them
as legitimate, and from their joining as man and wife in the
conveyance of her real estate, or her joining with him in a
deed or other act, releasing her right of dower in his estate ;
and from the disposition of property to a party by a mode of
assurance which is operative only where legal consanguinity
exists : " 2 Greenleaf's Evidence, § 462.

The evidence in this case is of two kinds—circumstantial
and direct or positive—the circumstantial, that which proves
marital cohabitation and reputation, circumstances from which
a marriage may be presumed.  For civil purposes, reputation
and cohabitation are sufficient evidence of marriage.  This
principle of law is well established by the following authori-
ties : Senser *v.* Bower, 1 P. & W., 450 ; Thorndell *v.* Morrison,
25 Pa. St., 326 ; Lehigh Valley R. R. Co., *v.* Hall, 61 Id., 361 ;
Hanna *v.* Phillips, 1 Gr., 253 ; Guardians of Poor *v.* Nathans,
2 Brewst., 149 ;  Bicking's Appeal, Id., 202 ;  Physick's Estate,
Id., 179 ;  Brice Estate, 2 W. N. C., 112.

The direct and positive proof consists of his declarations
that she was his wife :  Physick's Estate, 2 Brewst., 179 ; Audi-
tor's report, confirmed by Supreme Court, and this, together
with proof of cohabitation and reputation, is most satisfactory
evidence of an actual marriage : Vincent's Appeal, 10 P. F. S.,
225.  In Com. *v.* Litzenberger the Court say : " The husband's
declarations and admissions that the complainant is his wife
will sustain a proceeding for desertion ; " and in Hill *v.* Hill,
8 Casey, 511, his declarations that she is not his wife are not
admissible to disprove the marriage.

Mr. Chief Justice MERCUR delivered the opinion of the
Court, October 4th, 1886.

This is an appeal from a decree setting off $300 worth of
property to the alleged widow of Jacob R. Riegel, deceased.
Whether the appellee was ever his lawful wife, is the question
in the case.

It is clearly proved that they lived and cohabited together
for several years.  She gave birth to a child, which he claimed
and recognized to be his.  There is evidence that at times he
declared she was his wife, and introduced her as such.  On
one occasion, when he conveyed some real estate, she joined in
the deed as his wife.  At other times, when asked whether he

was married to her, he would give evasive answers, neither admitting or denying that he was or was not. At the time the child was born, Rebecca Forney swears they were not married, that witness asked each of them about that time. "He said he was not married, that he would take her for a housekeeper." "He said he would never marry her." "She said she was long ago married."

At other times the appellee spoke of him as her husband. Mrs. Dr. Rhoads, however, testifies after Riegel and the appellee had lived together for some time, that the latter "complained to her that he would not marry her." "She blamed his sister for being opposed to his marrying her." "She said whenever she would ask him to marry her, he would say, "I cannot, my sisters don't want you in the family." Witness further testified the appellee said, " She told Jacob Riegel to get himself another housekeeper if he would not marry her."

The whole evidence discloses quite a difference of opinion in the minds of their neighbors, as to whether they were married. It was so uncertain that there appears to have been much talk questioning it, while they were living together. The evidence does not show any actual marriage, nor any well recognized general reputation that they were married.

Soon after the death of Riegel and before his funeral, Ressler swears he was at her house and said to her, "You know there are rumors on the street that you and Jacob Riegel were not married ; " and she answered, "If we ain't married, I was true to him all the time we lived together."

She was afterwards called and testified in her own behalf. She denied generally that she had such a conversation with Mrs. Rhoads, and swore that she did not tell her that she said to Jacob, "If you don't want to marry me, then get yourself another housekeeper." She did not specifically deny other portions of Mrs. Rhoads's evidence equally as strong and expressive that no marriage existed ; nor did she deny having used the language testified to by Ressler. She did not swear that she was ever married to Riegel, or that there was any agreement between them under which they lived together as husband and wife. On the argument of the case in the Court below, it appears by the opinion of the Court that the appellant asked why she was not examined with reference to her marriage with the decedent. The answer was that she was called and testified only in rebuttal. The learned judge says "the question why she was not called and did not testify in chief, still remains unanswered, and I submit that I am not able to answer it."

We think the easy and correct solution of this question is to infer she was not called in chief to testify to an alleged

marriage with Riegel by reason of her known inability to testify to any fact sufficient to prove a marriage.

Undoubtedly they lived together for a long time under circumstances sufficient to prove intimate sexual relations; but cohabitation and reputation alone are not marriage. They are merely circumstances from which a marriage may sometimes be presumed. It is a presumption, however, that may be rebutted by other facts and circumstances: Hunt's Appeal, 86 Pa. St., 294. When the relation between a man and a woman living together is illicit in its commencement, it is presumed so to continue until a changed relation is proved. Without proof of subsequent actual marriage, it will not be presumed from continued cohabitation and reputation of a relation between them, which was of illicit origin: Id.

Here the evidence establishes with sufficient certainty that in its inception the relation between the appellee and Riegel was illicit, and there is no sufficient evidence to create a legal presumption of any subsequent marriage. In arriving at this conclusion we do not doubt the correctness of the law as declared in Richard v. Brehm, 73 Id., 140, and numerous kindred cases. Many times marriage may be proved by acts of recognition, continued matrimonial cohabitation, and general reputation. Here, however, the evidence falls far short of satisfying the mind that there was ever any actual agreement to form the relation of husband and wife.

There is another feature in the case, which, if proved, would establish that she is the wife of another man who is still living. The appellant gave evidence tending to prove that before the appellee formed any relations with Riegel she lived and cohabited with one Jeremiah Ribble, and was reported to be his wife, and he is still living. Some eight witnesses testify that Ribble and she were living together, keeping house and reputed to be husband and wife. Four of these witnesses were neighbors living on the same street with them; one was a cousin of the appellee; and three of them were brothers of Ribble. Two of the brothers testify that he told them he and she were married and were living together or keeping house.

The evidence of cohabitation and reputed marriage with Ribble, during the time she lived with him, is of the same general character as that given to prove the subsequent relations between her and Riegel; but that time was of much shorter duration.

She swears she never lived with Ribble as his wife. If, in fact, she lived and cohabited with him as his mistress, the reputation proved, and his declarations would not make her his wife. They would not be sufficient to establish the existence of a valid marriage with him. They do however tend to

[Spering v. Laughlin et al.]

strengthen the probability that she may have formed the same kind of meretricious relation with Riegel. The evidence of any marriage with him is too weak and uncertain to establish that relation, and the learned judge erred in holding other wise.

> Decree reversed at the costs of the appellee the confirmation of the appraisement to her is taken off, the exceptions thereto are sustained, and the appraisement is set aside.