# Commonwealth *v.* Gamble, Appellant.

*Criminal law—Adultery—Binding instructions to convict—Failure to give opportunity for full defense—Marriage—Evidence—Presumptions.*

It is only under very exceptional circumstances, if ever, that the court will be justified in giving binding directions to the jury to convict the defendant in a criminal case. Under no circumstances may this be done, without giving him a fair opportunity to present all of his relevant and material testimony, and according to him the constitutional right to be heard by his counsel upon the question.

By the law of Pennsylvania the status of marriage is reached through contract, deriving its validity from the consent of the parties thereto. There are different modes of proving the fact of marriage, but that it must be proved when it has been put in issue by a plea of not guilty to an indictment charging adultery, before the defendant can be convicted of that offense, is indisputable. It is not necessary to prove a ceremonial marriage in the presence of a civil or religious officer, but in the absence of that and of direct evidence of a marriage per verba de præsenti, there must be proof of conduct or declarations from which it may be presumed that the status of marriage has been entered into by the mutual consent of the parties.

On the trial of an indictment for adultery the court cannot charge the jury that the presumption of the prisoners's innocence is conclusively rebutted by proof of prior cohabitation and reputation of marriage with another woman, than the one referred to in the indictment.

In such a case where the defendant testifies positively and emphatically, in contradiction of the prosecutrix that there was no marriage between them, ceremonial or otherwise, and that he had never promised to marry her, or agreed to marry her, but admits on cross-examination that at one time he had passed her off as his wife, and introduced her as such at a hotel, it is reversible error for the court to stop the case before the defendant has closed, and against the protests of his counsel, to refuse to hear further testimony, and to direct the jury to convict the prisoner.

When the relation between a man and a woman living together is illicit in its commencement, it is presumed to continue so until a changed relation is proved. Without proof of subsequent actual marriage it will not be presumed from continued cohabitation.

Argued Nov. 22, 1907. Appeal, No. 96, Oct. T., 1907, by defendant, from judgment of Q. S. Bedford Co., April T., 1907, No. 5, on verdict of guilty in case of Commonwealth v. Robert

E. Gamble. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Reversed.

Indictment for adultery. Before WOODS, P. J.

Verdict of guilty, direction of the court upon which judgment of sentence was passed. Defendant appealed.

*Error assigned* was in directing the jury to convict.

*J. H. Longenecker*, for appellant.—The court has no power to direct a conviction, however clear the evidence may be: Abbott's Crim. Trial Brief, sec. 691; Kane v. Com., 89 Pa. 522; Com. v. Kay, 14 Pa. Superior Ct. 376; Stewart v. Com., 117 Pa. 378.

In all criminal cases the defendant has an absolute right to be heard by his counsel in argument to the jury: 2 Ency. of Pleading and Practice, 699; 1 Thompson on Trials, p. 704, sec. 905; Proffatt on Jury Trial, sec. 248; Wharton's Crim. Pleading and Practice, sec. 811; Cathcart v. Com., 37 Pa. 108, 111. The subject was likewise considered in the civil case of Lee v. Lee, 9 Pa. 169, 174–176.

The court was entirely mistaken in the statement that the law would presume marriage. If the facts referred to were sufficient to create a presumption it must necessarily be one of fact, not of law, and therefore for the determination of the jury. The court has no power to ascertain presumptions of fact: Kenley v. Kenley, 2 Yates, 207; Rumpff v. Vichestein, 3 Pitts. Rep. 148; Thomas v. Thomas, 124 Pa. 646; Wayne Twp. v. Porter Twp., 138 Pa. 181; Clark's Est., 173 Pa. 451.

It was proved and not denied that the relations of the parties were illicit in their beginning and continued so for some months. That being an established fact, no inference of marriage could be drawn from their continued cohabitation, but the presumption was that the character of their relations continued as it began: Appeal of Reading Fire Ins. & Trust Co., 113 Pa. 204, 208; Hunt's App., 86 Pa. 294; Yardley's Est., 75 Pa. 207; Bicking's App., 2 Brewster, 202; Com. v. Stump, 53 Pa. 132.

No printed brief for appellee.

·OPINION BY RICE, P. J., April 20, 1908:

All of the questions that need be discussed on this appeal are raised by the fourth, fifth and sixth assignments of error.

The defendant, when testifying in his own behalf, admitted the alleged sexual intercourse between himself and Etta Crissman, but denied that it was adulterous, as alleged in the indictment, and testified that prior thereto they were united in marriage on November 14, 1906, at Baltimore, Maryland, by a minister, whose certificate he produced and put in evidence. Therefore, as the case stood when the introduction of evidence was stopped, and the remark, ruling and instruction complained of in these assignments were made and given, the only essential to a conviction that was in dispute was the alleged marriage of the defendant to the prosecutrix prior to November 14, 1906.

As to this disputed matter, the commonwealth adduced evidence of two kinds: first, the testimony of the prosecutrix that they were united in marriage by formal ceremony conducted by a minister in the state of Indiana, on August 13, 1898; second, the testimony of other witnesses to the effect, that the parties subsequently cohabited at divers places outside of· this state and at Bedford in this state, as if they were husband and wife, and that the defendant on several occasions spoke of the prosecutrix, and introduced her to others, as his wife. The· defendant, on the other hand, testified positively and emphatically, that no marriage ceremony, or pretended marriage ceremony between him and the prosecutrix was performed at the time and place testified to by her, or at any other time or place; that they never were married; that he never promised to marry her or agreed to a marriage with her. Not only his direct testimony as to the beginning of their relation, but his testimony as to acts, declarations and conduct during the period over which their cohabitation extended, which affected the prosecutrix as well as himself, tended, if believed, to support his contention that the relation between them was meretricious in its inception and continued to be so to the end.

If the case had rested exclusively upon the testimony of

the commonwealth and the defendant above referred to, no one would contend that the court would have been warranted in declaring as matter of law that a valid marriage between the defendant and the prosecutrix was conclusively established by uncontroverted evidence. But at the end of the defendant's cross-examination he admitted, in answer to questions put by the commonwealth's counsel, that he had "passed off" the prosecutrix as his wife, that he had introduced her as his wife to those in charge of the hotel in Bedford, where they lodged and boarded from June to September, 1906, and had so introduced her and spoken of her to others. The court then asked the following question: "Did you live with her while you were here in Bedford as your wife, and so impress the people with it by the way you lived?" To which he replied: "I can answer that question by saying yes, with a definition." Being asked by the court to give the "definition," he replied: "Under the threats, Judge." Thereupon the court said: "This case has had wide enough duration, and we will instruct the jury to bring in a verdict of guilty." Counsel for defendant interposed a request to be heard before any further action was taken. To which the court responded: "The court has come to the conclusion that this man cannot come and live among the people and pass a woman among them as his wife. The law would not recognize that and if you want to file objection to my ruling you may do so." The counsel persisted in his demand to be heard, and amongst other things said: "We have testimony which will show clearly and beyond a question that he could not be convicted—." The court would not permit him to proceed further, but at once charged the jury as set forth in the fifth assignment of error, concluding with a direction to bring in a verdict of guilty. Immediately thereafter, and before verdict, counsel objected to the instructions; repeated his statement that the defendant had not rested his case but had other material evidence to offer; stated the nature of this additional evidence which he had been prevented by the action of the court from offering; and requested the court to open the case, and hear it. The ruling of the court was: "Request is refused. Grant an exception

to the defendant and take the verdict." This ruling and the matters pertaining to it are more fully set forth in the sixth assignment of error.

The foregoing recital of the proceedings on the trial shows that the court committed grievous error in arresting the introduction of evidence before the defendant rested. To assume, as the court must have done, that the defendant's representations above referred to, and his testimony that he had made them, so conclusively established the fact of marriage that the result of the trial could not be affected by any further evidence that might be offered was wholly unwarranted in law as we shall presently show. Nor was it warranted in fact, for as appears by the sixth assignment of error the defendant had other relevant and material evidence which he was prevented from ever offering until after binding direction to convict had been given. This mode of procedure cannot be approved; neither can it be said that it was harmless error. It is only under very exceptional circumstances, if ever, that the court will be justified in giving binding direction to the jury to convict the defendant in a criminal case. Under no circumstances may this be done, without giving him a fair opportunity to present all of his relevant and material testimony, and according to him the constitutional right to be heard by his counsel upon the question.

But apart from the irregularities upon which we have commented, the judgment must be reversed for the equally substantial reason that the instructions to the jury were erroneous under the evidence that was admitted. By the law of Pennsylvania the status of marriage is reached through contract, deriving its validity from the consent of the parties thereto. There are different modes of proving the fact of marriage, but that it must be proved when it has been put in issue by a plea of not guilty to an indictment charging adultery, before the defendant can be convicted of that offense, is indisputable. It is not necessary to prove a ceremonial marriage in the presence of a civil or religious officer, but in the absence of that and of direct evidence of a marriage per verba de præsenti, there must be proof of conduct or declarations from which it

may be presumed that the status of marriage has been entered into by the mutual consent of the parties. Cohabitation, ostensibly as husband and wife, and in such a way as to create the reputation of being married, are facts from which the fact of marriage may be presumed in a civil case. "The reason is," says a learned writer, "that such is the common order of society, and that if the parties were not what they thus hold themselves out as being, they would be living in the constant violation of decency and of law:" 1 Bishop, Marriage, Divorce and Separation, sec. 959. But neither cohabitation nor reputation of marriage, is marriage. When conjoined they are evidence from which a presumption of marriage arises, but the presumption arising from these facts may always be rebutted, and wholly disappears in the face of proof that no marriage in fact had taken place: Yardley's Estate, 75 Pa. 207; Hunt's Appeal, 86 Pa. 294; Appeal of Reading Fire Insurance and Trust Co., 113 Pa. 204; Grimm's Estate, 131 Pa. 199; Commonwealth v. Haylow, 17 Pa. Superior Ct. 541. We do not say that even in a criminal case the jury may not infer the fact of marriage from circumstantial evidence. Perhaps a case might arise wherein the cohabitation, reputation and attendant circumstances would so strongly and convincingly show that fact as to warrant the jury in finding that the presumption in favor of the defendant's innocence of the adulterous intercourse charged in the indictment had been overcome. But we can conceive of no criminal case wherein it would be within the province of the court to charge the jury that the latter presumption was conclusively rebutted by proof of prior cohabitation, and reputation of marriage, with another woman. To conclusively presume as matter of law from the circumstances, that the relation between the defendant and the prosecutrix was innocent, in order to rebut the presumption of the innocence of his subsequent relation with Etta Crissman under an ostensible marriage, would carry the doctrine of presumption of marriage far beyond the principle upon which it is founded and all of the adjudicated criminal cases in which that principle has been invoked. "For here presumption rebuts presumption, and here it is impossible that a presumed inno-

cence shall be adequate proof of alleged guilt. Therefore, in all actions of this sort [criminal prosecution for polygamy, for incest, for adultery, and some other offenses], and in all others in .which presumption thus conflicts with presumption, resort must be had to evidence of some other class. And the party setting up the marriage may select such other class as he can render practically available. It may be circumstantial or direct, or it may consist of confession, or it may be partly of one sort and partly of another. This is termed, in law phrase, proving a marriage in fact, or a fact of marriage:" 1 Bishop, Marriage, Divorce and Separation, sec. 106. See also 19 Am. & Eng. Ency. of Law, 1203. In a criminal case there can be no conclusive legal presumption of marriage from reputation and cohabitation where such presumption is in conflict with the prima facie presumption of the defendant's innocence of the offense charged in the indictment. But in the present case the defense did not rest solely upon the presumption of innocence, but was supported by evidence which, if believed by the jury, would, even in a civil case, have rebutted the presumption of marriage arising from cohabitation and reputation. It was not for the court to say that this presumption must prevail over the positive testimony of the defendant that no marriage, ceremonial or otherwise, was ever contracted between him and the prosecutrix. Further, if defendant is to be believed, the relation between them was meretricious in the beginning of the cohabitation, and according to the great weight of authority, the continuance of such cohabitation is presumed to be illicit, until there is satisfactory proof of a formal marriage, or of facts showing that the parties by mutual consent have changed the character of the relation: Hunt's Appeal, 86 Pa. 294; Appeal of Reading Fire Ins. and Trust Co., 113 Pa. 204; Grimm's Estate, 131 Pa. 199. Applying this principle to the testimony in the present case it would have been erroneous to instruct the jury as matter of law, that, even though the relation between them was meretricious in the beginning, a subsequent marriage in fact was conclusively established by the evidence as to their subsequent conduct.

Notwithstanding the unfortunate expression in the charge,

"It makes no difference in the eyes of the law whether she [the prosecutrix] is his wife or not," we assume that the court did not mean precisely that, but only that by the defendant's own admission she was his wife. But the defendant's admissions upon the witness stand that during the period, of their cohabitation in Bedford he had "passed off" the prosecutrix as his wife—had represented to many persons that she was his wife—were not tantamount to his testifying that she was his wife. Nor did the representations he admitted he had made estop him upon the ground of public policy, or any other ground, to allege the truth when he was put upon trial for adultery. He was not indicted for imposing on the public; and while his unsworn admissions, express or implied, that the prosecutrix was his wife, could be put in evidence against him, and the jury could find therefrom the fact of marriage— Forney v. Hallacher, 8 S. & R. 159—they were but evidence; they did not create an estoppel. Speaking of this subject, Judge KING said: "I consider that confessions and acknowledgments of a prior marriage are only evidence of the fact; that these confessions and acknowledgments derive their force from the time, manner, and circumstances under which they are made, and that connected with these, they may exhibit the most conclusive or the weakest testimony which can be offered of the fact. It is for intelligent jurors, aided by experienced courts, to weigh and discriminate their relative forces:" Commonwealth v. Murtagh, 1 Ash. 272. See also Commonwealth v. Haylow, 17 Pa. Superior Ct. 541. The defendant, having testified that no marriage, ceremonial or otherwise, had ever been contracted between him and the prosecutrix, had a right to demand that the question of his veracity in so testifying be passed upon by the jury before he be condemned.

Judgment reversed and venire facias de novo awarded.