# Prince *v.* Edwards.

### *Appointment of Administrator.*

(Decided February 8, 1912. 57 South. 714.)

1. *Evidence; Marriage; Presumption.*—While all reasonable presumptions are indulged in favor of marriage, such presumptions are overcome by proof that the relations were in their origin meretricious and unlawful, and such meretricious relation is presumed to continue until there is proof that the parties were married, but this presumption also whether of law or fact may be overcome by satisfactory proof of cohabitation, acknowledgment and reputation.

2. *Marriage; Common Law Marriage.*—The evidence examined and held to warrant a finding of cohabitation with matrimonial intent, although unlawful in its inception, and that after the death of the first husband, the parties renewed their matrimonial pledges, and entered into a common law marriage, as affecting the woman's right to letters of administration as a widow.

APPEAL from Jefferson Probate Court.

Heard before Hon. J. P. STYLES.

Sallie Prince and Lizzie Edwards filed rival petitions for letters of administration upon the estate of John Edwards, deceased. From an order granting letters to petitioner Edwards, petitioner Prince appeals. Affirmed.

JERE C. KING, for appellant. A man can have but one lawful wife living.—*Salter v. The State,* 92 Ala. 68;

[Prince v. Edwards.]

*Matrin v. Martin,* 22 Ala. 86; 141 Mass. 385. Where a former marriage has been established, there can be no marriage from cohabitation and repute.—19 A. & E. Enc. of Law, 1206; 55 N. J. E. 479; 102 Tenn. 148; 24 Colo. 456. No .valid common law marriage was here shown.—80 S. W. 1027; 35 South. 570; 72 Pac. 1061; 54 S. E. 613; 4 N. E. 408; 53 Miss. 37; Bishop Marriage & Divorce, sec. 506. The court, therefore, erred in finding a common law marriage relation to have existed between deceased and petitioner, to whom he granted letters of administration.

McNEAL & JONES, for appellee. In civil cases proof afforded by cohabitation, reputation and the conduct of the parties is sufficient.—Jones on Evid. sec. 88 and notes. The cases cited by appellant from this and other courts are not in point, as the only claim made by Lizzie Edwards is that she was the common law wife of John Edwards after the death of her first husband, and this is amply supported by the evidence and authority.—63 Mo. 501; 38 Md. 93; 108 N. W. 765; 43 Am. Rep. 677; 5 C. & F. 163; 14 N. H. 114; 3 Dana. 232; 45 N. J. E. 116; 127 Ill. 379; 86 N. Y. 487; 99 Am. St. Rep. 172. Under the Alabama authorities she was entitled to marry even at the time of the first attempt.—*Parker v. The State,* 77 Ala. 47; *Campbell v. Gullatt,* 43 Ala. 54; *Beggs v. The State,* 55 Ala. 108; *Tart v. Negus,* 127 Ala. 301; *Bynon v. The State,* 117 Ala. 80; *Moore v. Heineke,* 119 Ala. 627.

SOMERVILLE, J.—Appellant and appellee each filed her petition to be appointed as administratrix of the estate of John Edwards within 40 days after his death; appellant claiming to be his mother, and appellee claiming to be his widow. On hearing the petitions,

the probate court found, as a matter of fact, that appellee was the widow of John Edwards, and entitled to the preference claimed, and ordered that the letters of administration should issue to her as prayed. Appellant excepted to the finding of fact, and also to the decree granting administration to the alleged widow.

The evidence showed, without dispute, the following facts: Appellee, Lizzie Edwards, married one Jake Jemison in Birmingham about 1895. After living with him three or four years, he ran away, after first attacking and nearly killing her by cutting. Appellee never saw him again, but was told (at some unstated time) that he was in Selma. After Jemison's desertion of her, she cooked for a living until 1903, in which year she married John Edwards; this marriage, according to her testimony, was at the courthouse in Birmingham, and was solemnized by a person who was said to be Judge Porter (then probate judge); John Edwards having in his hand a paper represented to be a license. Appellee married Edwards under the name of Lizzie Ray; but the record of marriages "covering the period in which petitioner, Lizzie Edwards, claims to have been married to John Edwards" shows no license issued to John Edwards and Lizzie Ray. They then lived together as husband and wife, and while so living appellee was informed, in 1908, that Jake Jemison was dead, and this fact she communicated to John Edwards. After Jemison's death, she and Edwards continued to live together, treating each other as husband and wife, recognized as husband and wife by their neighbors, and looked upon in the community as such. They called each other husband and wife, and on one occasion (after Jemison's death) she introduced him to the witness Frank, on the streets of Birmingham, as her husband. This status continued until Edwards' death in May, 1911.

Appellant's contention is that, however satisfactorily these facts and conditions might ordinarily evidence a common-law marriage, their effect is here completely destroyed by the fact, as alleged, that appellee's connections with Edwards was originally meretricious and unlawful; that its original character is, as matter of law, presumed to continue until a change to a lawful status is shown; and that the burden is on appellee to distinctly show that a new marriage contract or agreement was made between her and Edwards subsequently to the death of Jemison. And it is insisted that there is nothing in the record to show such a consensus between them.

The general principle is thus stated: "While all reasonable presumptions are in favor of marriage, yet they are overcome by proof that the relations were in their origin illicit and unlawful. The illicit relation is presumed to continue until there is proof that the parties were married. This presumption, whether of fact or of law, may be overcome by satisfactory proof of cohabitation, acknowledgment, and reputation."—19 Am. & Eng. Ency. Law (2d Ed.) 1206, f.

Some authorities have very properly held that, where the relation was at first notoriously meretricious—that is, lustful and without matrimonial intent—as distinguished from unlawful merely, and especially where the parties willingly choose the meretricious state in defiance of law and social custom, there being no impediment to lawful matrimony, the evidence of a change to lawful matrimony ought to be clear and strong.—*Klipfel v. Klipfel*, 41 Colo. 40, 92 Pac. 26, 124 Am. St. Rep. 96, 103, and note page 113. Mr. Browne, in his note to *Appeal of Reading, etc., Co.*, 113 Pa. 204, 6 Atl. 60, 57 Am. Rep. 448, 461, says: "The presumption of the continuance of the illicit cohabitation is not so easily over-

come where it appears that the parties have manifested a preference for a meretricious union. In such a case, the authorities seem to be uniform that, in the absence of some evidence of a change in the relation between the parties, they are presumed to continue in that relation" —citing *Collins v. Collins*, 80 N. Y. 9; *Badger v. Badger*, 88 N. Y. 553, 42 Am. Rep. 263; *State v. Worthingham*, 23 Minn. 528; *Yardley's Estate*, 75 Pa. 207, and other cases.

After a very full review of the authorities, both English and American, Mr. Browne states the following conclusions: (1) That an illicit connection is presumed to continue until there is evidence to the contrary. (2) That, where the parties have manifested a desire to form a matrimonial union, the presumption will be rebutted, so as to make the question one of fact, by the slightest circumstance; and that a mere cohabitation, without any apparent change, after the parties have the right to contract a valid marriage will suffice to justify a submission of the question of marriage to a jury, and in fact require it. (3) That, where the parties are shown to have preferred a meretricious connection, something more than continued cohabitation, after the impediment to a legal marriage has been removed, will be necessary to rebut the inference of the continuance of the original character of the cohabitation; there must be evidence to satisfy the mind of an actual change in the relation between the parties, or at least of a desire for a change. (4) That, where there is any evidence to rebut this inference of continuance of an illicit union, the question is one of fact.

Upon a survey of the authorities reviewed by Mr. Browne, and also of the many later ones, we approve the justice and propriety of his conclusions.

In *Badger v. Badger,* 88 N. Y. 554, 42 Am. Rep. 263, it is correctly declared that "a change may occur and be satisfactorily established, although the precise time or occasion cannot be clearly ascertained."

In *State v. Worthingham,* 23 Minn. 528, the following language is used: "An intercourse originally unlawful and lustful from choice undoubtedly raises the presumption that its character remains such during its continuance. But this is a presumption, not of law, but of fact, for the consideration of the jury in connection with the particular facts and circumstances of the case. In the case at bar, it appears that the cohabitation between the parties had its origin, in part at least, in a desire for marriage, and under the promise that such a relation should be assumed as soon as defendant could procure a divorce from his then wife. This indicates that the parties regarded the married state as one preferable to that of concubinage, and weakens somewhat the force of the presumption ordinarily attaching to an original illicit cohabitation. The weight which is to be given to it, however, in this, as in every other, case rests exclusively with the jury, in the exercise of. its best judgment, under proper instructions from the court."

In the well-considered case of *Adger v. Ackerman,* 115 Fed. 124, 129, 130, 52 C. C. A. 568, it was said, per Sanborn, J.: "But the true rule and the great weight of authority is that, inasmuch as the law itself and all its presumptions deprecate illegal, and favor lawful, relations, slight circumstances may be sufficient to establish a change from an illicit to a legal relation, and proof of its time or place is not indispensable. * * * The principle of law is that, where parties who are incompetent to marry enter an illicit relation, with a manifest desire and intention to live in a matrimonial

union, rather than in a state of concubinage, and the obstacle to their marriage is subsequently removed, their continued cohabitation raises a presumption of an actual marriage immediately after the removal of the obstacle, and warrants a finding to that effect." In accord with this is the text of 19 Am. & Eng. Ency. Law, 1208, d.

Some courts have made the presumption just stated depend upon the fact of a *ceremonial* second marriage as being indispensable to show the matrimonial intent; others have required that at least one of the parties should have entered into the illicit relation in ignorance of the obstacle, and some require that the parties shall have been informed of the removal of the obstacle; while others hold such knowledge unnecessary. We apprehend, however, that, while all of these matters may be material aids in the solution of the question of marriage vel non, they are not ordinarily to be regarded as conclusive, and are to be considered, along with all the other evidence, simply for what they are worth.—See *Moore v. Heineke,* 119 Ala. 627, 24 South. 374.

It is true that courts have no right to marry people who never wished nor intended to be married, and equally true that it is not their office or policy to place a premium on the defiance of law and social custom by lifting lust to the level of honorable matrimony. But these results cannot be reasonably feared from the practical application of the principles we have declared.

The cases, presenting all phases of this much-discussed subject, will be found fully reviewed in the case notes to *Appeal of Reading, etc., Co.,* 113 Pa. 204, 6 Atl. 60, 57 Am. Rep. 448, 461; *Klipfel v. Klipfel,* 41 Colo. 40, 92 Pac. 26, 124 Am. St. Rep. 96, 113; and *Chamberlain v. Chamberlain,* 68 N. J. Eq. 736, 62 Atl. 680, 3 L. R. A. (N. S.) 244, 111 Am. St. Rep. 658, 6 Ann. Cas. 483, 484.

[State v. Ide Cotton Mills.]

There are several cases from highly authoritative jurisdictions which are not in harmony with our views. —*Cartwright v. McGown,* 121 Ill. 388, 12 N. E. 737, 2 Am. St. Rep. 105; *Collins v. Voorhees,* 47 N. J. Eq. 315, 20 Atl. 676, 14 L. R. A. 364, 24 Am. St. Rep. 412. But these are opposed to the great and increasing weight of authority.

It only remains to apply the foregoing principles to the facts of this case, and we are clearly of the opinion that it was open to the trial court to find that the entire connection between John Edwards and appellee was with matrimonial, and not with meretricious, intent, notwithstanding it was unlawful in its inception; and to find, also, that, at some time between the date of Jemison's death (of which they were both informed) and the death of Edwards (a period of two or three years), these parties renewed their matrimonial pledges, and entered into a new understanding that they were thenceforth husband and wife in law, as well as in fact, without let or hindrance. Such a finding should not be disturbed, unless clearly erroneous, and we cannot so regard it.

Affirmed. All the Justices concur.