31 So.2d 507

## CLARK v. GLENN.

### 5 Div. 428-A, 428-B.

Supreme Court of Alabama.

June 26, 1947.

Denson & Denson, of Opelika and Reynolds & Reynolds, of Clanton, for appellant.

Jacob A. Walker and R. C. Smith, both of Opelika, for appellee.

**FOSTER, Justice.**

This is a petition by appellant, to whom we will refer as Gladys, filed in the Lee County Probate Court to revoke letters of administration issued by that court to E. H. Glenn, who was the county general administrator, on the estate of Bunk Henry Clark, to whom we will refer as decedent.

In the original petition to revoke, she alleged that she is the widow of decedent, and was appointed administrator of his estate in Chilton County on August 16, 1946, the next day after E. H. Glenn was appointed administrator in Lee County.

Thereafter she filed a petition for the removal into equity, and it was so ordered. Ex parte Kelly, 243 Ala. 184(4), 8 So.2d 855.

The trial was had on testimony taken in open court. She amended her petition to revoke and by it alleged that she was a creditor of the estate in a large sum of, towit, $1,000 for money advanced in his lifetime, and $500 funeral expenses she paid, and was and is the largest creditor of said estate.

The court found:

1. That the appointment of E. H. Glenn was improper and premature under section 138, Title 61, Code (forty days).

2. That no assets of his were brought into Lee County after his death.

3. That Bunk Henry Clark was an inhabitant of Chilton County at the time of his death.

4. That Gladys is the largest creditor of said estate and applied for letters within forty days and is entitled to letters in preference to Mr. Glenn. Section 81, Title 61, Code.

5. That there was no lawful marriage of Gladys with decedent.

A decree was accordingly entered revoking the letters issued in Lee County to Mr. Glenn, and declaring that there was no lawful marriage of Gladys with decedent, and she has no claim as the widow of his estate, and it taxed one-half the costs of this proceeding against each of the parties, and all costs in the Probate Court of Lee County against respondent who was Glenn, as administrator. Both parties appeal. Gladys is insisting that there was error in adjudging that she was not the widow of decedent.

Mr. Glenn is insisting that the decree is erroneous in other findings of the court, and in revoking the letters granted in Lee County, and in any event in taxing any of the costs against him.

The motion to revoke does not go to the fitness of the man appointed, nor to the existence of any of the grounds declared in section 178, Title 61, Code, to justify such removal.

But there are two grounds assigned. One was that the appointment in Lee County was not justified by any of the conditions of section 80, Title 61, Code, for that at the time of his death, he was either an inhabitant of California or of Chilton County, Alabama; that at that time he had certain personal property, all of which was then in Chilton County, or was brought into Chilton County after his death; that he was not a resident of Lee County at the time of his death; that he did not die in Lee County; that he had no property in Lee County at the time of his death; that no property of his was carried into Lee County subsequent to the time of his death.

And the second was that letters were issued to Mr. Glenn, the general administrator of Lee County, within forty days of the death of decedent in violation of law.

The petition of Mr. Glenn for letters alleged facts which justify his appointment under section 80(4), Title 61, Code, in Lee County. The probate judge on said petition found and declared that those facts were substantially true and made the appointment, and issued letters.

Although those facts may not have been true, that court had the power to make the finding and declaration, and therefore the appointment was not void but was voidable, and subject to revocation on direct attack. And the appointment of Gladys in Chilton County was void and remains void, and that of itself did not confer on her the power to petition to vacate the appointment in Lee County. Coltart v. Allen, 40 Ala. 155, 88 Am.Dec. 757; Barclift v. Treece, 77 Ala. 528; Holmes v. Holmes, 212 Ala. 597, 103 So. 884. Such right under that appointment is not claimed in this proceeding, but only the right of her interest in the controversy in other respects.

The largest creditor of an estate may make application to revoke letters prematurely granted to another, under sections 138 and 83, Title 61, Code, but to do so must make his own application for letters within the forty day period. Curtis v. Williams, 33 Ala. 570; Starlin v. Love, 237 Ala. 38, 185 So. 380.

But the right to revoke because the appointment was not justified by section 80, Title 61, Code, does not depend upon the fact that the petitioner has or has not applied for letters to himself. This power to revoke because its issuance is not so authorized is said to be an exercise of the inherent power of the court. Koger v. Franklin, 79 Ala. 505; Watson v. Glover, 77 Ala. 323; Bradley v. Broughton, 34 Ala. 694, 73 Am.Dec. 474; Ashurst v. Union Bank & Trust Co., 200 Ala. 559, 76 So. 917; Moring v. Lisenby, 241 Ala. 626, 4 So.2d 4.

The petition of Gladys includes both aspects as we have shown. If letters were not authorized by section 80, Title 61, Code, there is no need to inquire into the other aspect. It is not alleged to be in the alternative, but we suppose it was so intended, and in it she prays for letters to herself, which we also presume was intended to be conditioned on a finding that the court in Lee County had such right. But the court found that Lee County did not have that right, and therefore that aspect need not be further considered if that finding is sustained.

In passing on the motion to revoke the letters, the contest is between Gladys and

Glenn, and its result does not affect the substantive rights of Gladys either as an alleged creditor of the estate who may later be seeking to establish it as a claim, thereby making the estate interested in the result, or as the alleged widow of decedent later seeking to share as such in the distribution of the estate when the heirs and distributees would be the interested persons, and would therefore be necessary parties. Jacobs v. Murphy, 245 Ala. 260, 16 So.2d 859. In seeking to establish a claim against the estate or to support its payment as to a creditor, section 433, Title 7, would apply, but not so in a contest with the heirs and distributees as to whether she should share in the distribution as the widow. In the controversy now before us a holding as to either of those matters would not serve to increase or diminish the estate of decedent. And therefore section 433, Title 7, supra, does not in this proceeding disqualify any of the interested witnesses to testify as to any transactions with or statements by decedent. Hanson v. First National Bank, 217 Ala. 426, 116 So. 127; Alexander v. Alexander, 214 Ala. 291, 107 So. 835; Foy v. Dent, 210 Ala. 475, 98 So. 390; Darrow v. Darrow, 201 Ala. 477, 78 So. 383.

The only issues triable in this proceeding are those relating to the revocation of letters issued in Lee County. The trial court found that none of the facts set up in section 80, Title 61, Code, existed so as to justify the issuance of letters in that county, and that Gladys had such interest as to invoke the power of the court to revoke the letters on that ground.

◼ The issues were tried and heard by the judge on evidence taken in open court, and his findings which were necessary to decide whether the letters issued to Mr. Glenn should be revoked have on appeal the force of a verdict if it had been tried by a jury.

Those findings are that decedent was not an inhabitant of Lee County at the time of his death, but was an inhabitant of Chilton County, and that no assets of his were brought into Lee County after his death. It was admitted in the answer that he had no assets in Lee County at the time of his death. That not being disputed did not enter into the finding. If as found by the court, decedent was an inhabitant of Chilton County when he died in California, and that Gladys was the largest creditor, and therefore interested so as to justify this petition, coupled with the admitted fact that at the time of his death he had no assets in Lee County, justified and required a revocation of the letters granted in Lee County without regard to the forty day period.

◼ We think the evidence fully supports the finding that he was an inhabitant of Chilton County when he died (this means domicile, Holmes v. Holmes, supra); and it was admitted that he left no assets in Lee County at the time of his death, and the evidence also supports the finding that Gladys was the largest creditor of his estate. The court therefore properly revoked the letters and ordered him to make settlement under section 320, Title 61, Code.

◼ It may not have been necessary for the court to find that Gladys was not legally married to deceased in respect to her petition to revoke after finding that she had the right thus to petition for other reasons so long as that finding stood. But she alleged the two reasons why she had that right. Both were contested. It was the province of the court to decide them both. We think that he was justified by the evidence in respect to both findings. There was evidence to the effect that when Gladys and deceased began their relations, deceased had a living wife. This was in 1935. The evidence does not sustain a finding that there was then a ceremonial marriage between them in LaGrange, Georgia, as claimed, or at any other time or place. There was no record of it found. But if there was, it would be void if the court should find from the evidence that deceased and his wife were not divorced until May 2, 1938. Deceased and Gladys evidently lived together as man and wife until he died in July 1946. But before May 2, 1938, and while they were temporarily living in Texas, and in 1936, he had her and his brother Grady to go into Oklahoma and have a regular ceremonial marriage, of which there is a full record. True that was intended as a show, and to prevent a threatened prosecution, and was never consummated by cohabitation, but she and deceased continued to cohabit as man and wife as

before and until he died, but no reason is assigned why this marriage was not lawful.

She claims also a common-law marriage with deceased in the absence of a record of a ceremonial marriage. The general rule is that if a common-law marriage is shown the law presumes its validity and casts on him who questions it the burden of establishing its invalidity. Sloss Sheffield Steel & Iron Co. v. Alexander, 241 Ala. 476, 3 So.2d 46; Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813.

But if their relation was illegal in its inception, it is presumed to continue so, and the burden of proving a subsequent lawful marriage rests on the party asserting it. 38 Corpus Juris 1328, section 103; Prince v. Edwards, 175 Ala. 532, 57 So. 714.

In this case Bunk Henry Clark left his lawful wife and children, and immediately took up with Gladys. There was no opportunity in that time to secure a divorce. A presumption to that effect would be fanciful. Their relation was then meretricious and unlawful. The court will not give artificial or technical force to evidence which is supposed to warrant the presumption that a divorce was granted beyond the natural tendencies to convince the mind. Bell v. Tennessee Coal & R. Co., supra; Sloss Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166.

Deceased's wife, Louise, testified that she never had but one divorce from him, and that was on May 2, 1938, although she also had married a man named Davis in January 1937.

It may be that if Gladys had been free on and after May 2, 1938, her relations with deceased could have been such as to make them man and wife. Prince v. Edwards, supra. The evidence is that no divorce was granted her from Grady, and the only divorce granted Louise from deceased was May 2, 1938. We will not indulge in fanciful presumptions contrary to such tendencies of the evidence. The divorce decree of May 2, 1938, and the other circumstances do not justify us in presuming as true that which is obviously false. At no time was it lawful therefore for deceased and Gladys to be man and wife. Be-

fore her marriage with the brother, deceased had another lawful wife; after such marriage, she had another lawful husband. That impediment remained until the death of deceased. Therefore though they lived as man and wife, and held each other out as such, it could not have been lawful, as the court was justified in finding. But neither that holding now made, nor that she is the largest creditor, serves to fix her status as to those matters when they come up for determination on a distribution of the estate. There may then be other evidence sufficient to support a different finding in both respects.

In Coltart v. Allen, supra, a question was posed which would decide whether the appointment of Gladys in Chilton County was absolutely void on account of the appointment previously made in Lee County, which has been found to be voidable, and is now revoked. Reference was there made to an English authority which held that the second administration was suspended until the first is revoked. But doubt was expressed whether under our law a grant of administration could be made which though not effective at the time might take effect at some future time upon the revocation of the prior administration. But the question was found not necessary to be decided in that case. Section 87, Title 61, Code, provides that when letters are issued by a court having jurisdiction, they are conclusive of his authority from that date until they are revoked, and exclude the probate court of every other county from the jurisdiction thereof. The Probate Court of Lee County was a court of general jurisdiction for this purpose (section 278, Title 13, Code), and found and declared its jurisdiction to appoint an administrator, and its appointment of Mr. Glenn had every element of validity until it was revoked. Peek v. Haardt, 235 Ala. 145, 177 So. 634, 113 A.L.R. 1395. The appointment of Gladys by the Probate Court of Chilton County was without jurisdiction and void (Beasley v. Howell, 117 Ala. 499, 22 So. 989), and it was not revived by the revocation of the Lee County appointment. The Probate Court of Chilton County should therefore purge its records of the illegal appointment and proceed to act upon the

petition of Gladys still on file as though it had not been acted on, subject to any amendment which may now be offered.

We note that in the case of Tubbs v. Barnard, 225 Ala. 435, 143 So. 448, the record of the court first appointing an administrator showed on its face that it was without jurisdiction.

### On the Question of Costs.

Both parties assigned errors in respect to the decree taxing the costs as in other respects.

Gladys was successful in having the letters issued in Lee County to Glenn revoked. That was the object of her petition. She claimed the right thus to petition for two reasons: one, that she was the widow of deceased, and, two, that she was his largest creditor. The court found that she had the right for the second reason stated above, but that she did not have it for the first reason. To be successful it was not necessary to prove both those contentions. Either of them was sufficient, and one was proven, and her petition granted. She was therefore the successful party, and was not, we think, subject to be assessed any part of the costs of this proceeding, but it should all be assessed against Mr. Glenn, as administrator.

As we have noted, the appointment of Glenn in Lee County was voidable, but not void, and was subject to revocation only on direct attack. The rule in that situation is that such a person is entitled to credit or reimbursement for expenditures properly made in connection with his administration (33 Corpus Juris Secundum, Executors and Administrators, § 221, p. 1208), when he has acted in good faith, not knowing that he was not entitled to be appointed. 34 Corpus Juris Secundum, Executors and Administrators, § 855, p. 1010. 33 Corpus Juris Secundum, Executors and Administrators, § 87, p. 1030. The costs taxed against him should be allowed as a credit and payable out of the estate as a valid claim on making his settlement as herein provided, or out of the estate when an administrator is appointed in some other county.

Neither of the parties therefore was successful on this appeal, as to the merits of the controversy. We think that the costs of this appeal should be equally divided, and that the decree of the trial court so modified as to relieve Gladys from the payment of any costs which accrued prior to the appeal.

As so modified, the decree is affirmed.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.