The issue in this case is the validity of a common law marriage in light of a previously undissolved ceremonial marriage. This same set of facts has been previously appealed twice to the Court of Civil Appeals. See, Courtaulds NorthAmerica, Inc. v. Lott, 403 So.2d 240 (Ala.Civ.App.), cert.denied, 403 So.2d 244 (Ala. 1981); and Courtaulds NorthAmerica, Inc. v. Lott, 435 So.2d 738 (Ala.Civ.App.), aff'd,435 So.2d 742 (Ala. 1983). Only one party to these prior appeals is a party to the present action. In both prior appeals a judgment supporting the later common law marriage was reversed by the Court of Civil Appeals. After the second reversal, the parties agreed for the court to enter a consent decree, again upholding the validity of the common law marriage. In the present case, the trial judge held that this consent decree is not binding on the present parties. We affirm.
The judge below made the following findings of fact:
(1) Barbara Jean Murphy (Barbara) married Clarence Murphy (Clarence) in a ceremonial marriage in 1954 in Mobile County, Alabama. Later that same year, Barbara and Clarence moved to Chicago, Cook County, Illinois, and resided there together continuously until 1959.
(2) In 1959, Barbara and Clarence voluntarily separated and Barbara left Chicago and moved to California and resided there *Page 318 
continuously until 1962. The only known county in which Barbara resided in California was Los Angeles County.
(3) In 1962, Barbara left California and moved to Alabama and resided continuously in Alabama until her death. The only counties in which Barbara resided in Alabama upon her return in 1962 were Mobile and Elmore.
(4) From the date of their marriage until the date of Barbara's death, the only counties in which Clarence resided were Cook County, Illinois, and Mobile County, Alabama.
(5) From the date of their marriage until the date of Barbara's death, Clarence neither initiated divorce proceedings nor was aware of any proceedings initiated against him by Barbara. Clarence was never served with divorce papers after his marriage to Barbara.
(6) In the records of the courts of competent jurisdiction in Mobile County, Alabama, Elmore County, Alabama, Cook County, Illinois, and Los Angeles County, California, no record can be found of a divorce between Barbara and Clarence.
(7) Barbara died in Mobile County, Alabama, on February 2, 1979.
(8) On December 28, 1983, final judgment was entered in a workmen's compensation case filed by Jake Lott (Lott), in which Lott was alleged to have been a dependent of Barbara at the time of her death within the meaning of the Alabama workmen's compensation laws, against Courtaulds North America, Inc., (Courtaulds), Barbara's employer at the time of her death. Prior to the date of the final judgment, Clarence, earlier made a party defendant, was voluntarily dismissed.
(9) The judgment in the workmen's compensation case was entered upon findings of fact and conclusions of law agreed to by Lott and Courtaulds. No true judicial determination was made by the court in the workmen's compensation case; rather, the final judgment and order in that case were prepared by Lott prior to the date of entry, agreed to by Courtaulds prior to such date, and entered by the court in form as presented.
(10) One conclusion of law by the court in the workmen's compensation case was that Lott was the common law husband of Barbara at the time of Barbara's death.
(11) The workmen's compensation settlement was agreed to by Lott and Courtaulds only after earlier judgments in that case in favor of Lott had been twice reversed on appeal. The subject of each appeal was evidence offered by Courtaulds to show that the marriage of Barbara and Clarence was never dissolved prior to Barbara's death.
(12) Leona Toomey (Leona) was not a party to the workmen's compensation case. Her interests were not represented therein by any party. On October 28, 1983, Leona's application to intervene in the workmen's compensation case was denied.
The present action was filed by Lott against Leona and the Foxboro Company. Leona, as personal representative of Barbara's estate, had filed a wrongful death action against Foxboro pursuant to Code 1975, § 25-5-11. The two actions were consolidated for trial. Thereafter, Lott filed this declaratory judgment action, and prayed that the pending wrongful death action be stayed until a decision on the merits of this case could be reached. The trial court ruled in favor of Leona.
Leona contends that due to the undissolved marriage between Barbara and Clarence, Barbara was barred from contracting a valid common law marriage with Lott. This same issue was the subject of the two previous cases involving Lott. Lott claims, in part, that due to the prior disposition of this issue, Leona is barred by the doctrines of res judicata and collateral estoppel from relitigating it. Lott further claims that Leona has no standing to challenge the common law marriage, and that even if she does, she failed to sustain the burden of proof. We disagree with Lott, and, therefore, affirm.
The elements of both res judicata and collateral estoppel were set out by this *Page 319 
Court in Wheeler v. First Ala. Bank of Birmingham,364 So.2d 1190, 1199 (Ala. 1978). Res judicata requires (1) a prior judgment rendered by a court of competent jurisdiction; (2) a prior judgment rendered on the merits; (3) substantially the same parties in both suits; and (4) the same cause of action in both suits. Where these elements are present, the former suit bars any later suit on the same cause of action, including issues that were or could have been litigated in the prior case.
Collateral estoppel requires (1) an issue identical to one litigated in the prior suit; (2) that the issue has been actually litigated in the prior suit; and (3) that the resolution of that issue have been necessary to the prior judgment. In addition, the parties must have been the same in both suits. Where these elements are present, the parties are barred from relitigating issues actually litigated in a prior suit.
The judge below determined that Leona, as the personal representative, was the proper party to bring suit against Foxboro. Thus, she was not bound, either by res judicata or collateral estoppel, from litigating the issues determined by consent decree in the previous cases. A consent decree, the judge determined, is binding upon only the parties who agreed to it, and not to a stranger to the agreement. In other words, the judge held that Leona was not a party to the former suit, and that the consent decree was not a final determination on the merits. We agree.
In order for one suit to bar subsequent litigation, the parties must have been substantially the same in both cases. This means that the parties in both cases must be either the same, or in privity of estate, blood, or law with the original parties. Clark v. Whitfield, 213 Ala. 441, 444, 105 So. 200,203 (1925). Leona had no opportunity to present her arguments in the prior case, nor were her interests adequately represented by those who were parties. Her attempt to intervene in the previous lawsuit was denied; thus she was not personally represented in the case. Nor did Clarence and Courtaulds, the two litigants in the first action against Lott, represent her adequately so as to bar the present suit. Clarence was dismissed prior to trial and Courtaulds settled with Lott.
Further, the act of the settlement indicates that the issue of the validity of the common law marriage has not been fully and finally litigated. In their settlement, Courtaulds stipulated that Barbara and Lott were validly married. As Lott notes, a consent decree is binding only on the parties to it.Cowley v. Farrow, 193 Ala. 381, 384, 69 So. 114, 115 (1915). However, not having been a party to the prior litigation, Leona is not so bound. Thus, as to her, the previous litigation was not settled on the merits. Rather, as pointed out in Cowley,193 Ala. at 384, 69 So. at 115, a consent decree is more in the nature of a contractual obligation.
Lott also argues that Leona has no standing to litigate the issue of the invalidity of the common law marriage. However, the right of a stranger to a marriage to litigate its validity has been determined in the prior suit. In Courtaulds NorthAmerica, Inc. v. Lott, 435 So.2d 738 (Ala.Civ.App.), aff'd,435 So.2d 742 (Ala. 1983), it was held that Courtaulds had the right to have admitted into evidence divorce records of the counties where Barbara lived in order to disprove any possibility of divorce. If Courtaulds has standing to litigate this issue, so does Leona, as, if the common law marriage is proven invalid, she will be the correct party to litigate the wrongful death action. See, Code 1975, § 6-5-410. Thus, her interest is sufficient to grant standing.
As to Lott's final contentions, the Court adopts portions of the trial judge's opinion as its own:
 "3. Estoppel. Ashley v. Ashley, 255 Ala. 313, 51 So.2d 239 (1951), is correctly cited by Lott for the proposition that where one spouse is estopped from denying the validity of a prior marriage because of a divorce decree dissolving that marriage, a collateral relative of that spouse claiming in succession is bound *Page 320 
after such spouse's death by the same estoppel. . . . In that case, the divorce decree had become unimpeachable by prescription after the expiration of 20 years from its date (Ashley, supra, [255 Ala. at 318, 51 So.2d at 243]). Perhaps most dispositive of this issue, however, is the fact that Leona is not claiming in succession in this matter; her interest herein is as personal representative of Barbara and administratrix of her estate. Not so claiming, Leona is not somehow bound by Barbara's failure to deny the existence of a common law marriage to Lott. Barbara's failure to deny an existent marriage cannot be equated with the failure of a spouse to attack such spouse's own 20 year old divorce decree. We are here dealing not with the effect of a legal divorce fixing the rights of the parties thereto at a point certain, but the effect of [an] alleged common law marriage, invalid at all times prior to Barbara's death.
 "Leona is not estopped from asserting the validity of Lott's common law marriage to Barbara.
"* * *
 "5. Burden of Proof. Where a common law marriage has been shown, the law presumes its validity and casts the burden of proving its invalidity upon the party attacking the marriage. Cross v. Rudder, 380 So.2d 766 (Ala. 1979); Sloss-Sheffield Steel Iron Co. v. Alexander, 241 Ala. 476, 3 So.2d 46 (1941). Thus, Leona bears the burden of establishing that the marriage of Clarence and Barbara had not been dissolved prior to her death. Jackson v. Jackson, 49 Ala. App. 702, 275 So.2d 683 (1973).
 "This presumption is rebuttable and is overcome when the facts and circumstances, in light of all reasonable inferences, show that the first marriage was not dissolved. Metropolitan Life Insurance Co. v. Spearman, 344 F. Supp. 665 (D.C.Ala. 1972); Dorsey v. Dorsey, 259 Ala. 220, 66 So.2d 135 (1953). Indeed, the Alabama Supreme Court has made it clear that the presumption of the validity of the second marriage should not be extended to find a strained result where there is uncontradicted evidence of an undissolved prior marriage. Hammond v. Shipp, 292 Ala. 113, 289 So.2d 802 (1974); Clark v. Glenn, 249 Ala. 342, 31 So.2d 507 (1947). On those occasions, the Supreme Court has addressed the danger in assigning too great a weight to the presumption. In Bell v. Tennessee Coal, Iron R. Co., 240 Ala. 422, 199 So. 813 (1941), it was noted:
 "`The presumption of the dissolution of a prior marriage, whether by death or divorce, should be indulged with caution. We apprehend that such presumptions sometimes have been made with very little justification. A rule of law which allows an artificial or technical force to be given evidence which warrants such presumptions, beyond its natural tendencies to convince the mind, and requires court and juries to presume as true that which is false, cannot but be fraught with dangerous consequences.'
 "While not foreclosing any other method of rebutting the presumption of the validity of a subsequent marriage, the Alabama courts have regarded with particular favor the introduction into evidence of court records from all of the places where the first marriage partners are shown to have resided. The burden of rebuttal will be met where the records establish the lack of any divorce granted in the respective jurisdictions. Ellis v. Ellis, 50 Ala. App. 67, 277 So.2d 102 (1973); Dorsey v. Dorsey, 259 Ala. 220, 66 So.2d 135 (1953); Bell v. Tennessee Coal, Iron R. Co., 240 Ala. 422, 199 So.2d 813
[199 So. 813] (1942).
 "This Court has before it affidavits from each of the four counties where the evidence shows Clarence and Barbara to have lived, indicating the lack of any record of divorce. In the absence of any showing that either of the spouses might have established residence in any other jurisdiction and therein obtained a divorce, Leona has established the existence of the legal impediment of a prior *Page 321 
undissolved ceremonial marriage between Barbara and Clarence which would have prevented Barbara and Lott from contracting a common law marriage. To require more would be to assign an irrebuttable nature to the presumption herein considered. While Leona, in this case, `. . . has the burden of proving that the prior marriage was undissolved, . . . such burden must not require the impossible.' Courtaulds North America, Inc. v. Lott, 435 So.2d 738 [Ala.Civ.App.], aff'd, 435 So.2d 742 (Ala. 1983)."
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs in the result.
ALMON and EMBRY, JJ., not sitting.