[Johnson v. Johnson.]

# Johnson *v.* Johnson

## *Divorce.*

(Decided February 1, 1912.   Rehearing denied May 1, 1912.
58 South. 418.)

*Marriage; Annulment; Grounds; Fraud.*—The fact that a husband in contracting the marriage did so with the intention of abandoning the relation, and also to prevent the wife testifying against him in a criminal prosecution, does not constitute such fraud as renders the marriage void, and entitles the wife to an annulment.

APPEAL from Clay Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by Evie Johnson for a divorce and annulment of marriage filed against H. J. Johnson, the husband. From a decree for respondent complainant appeals. Affirmed.

RIDDLE, ELLIS, RIDDLE & PRUET, for appellant.   Under the facts in this case such a fraud was perpetrated by the husband as entitled the wife to an annulment of the marriage contract.—2 Nelson on Divorce, 535. Fraud vitiates every transaction which it enters.— *Eslava v. Eslava,* 50 Ala. 32; *Comer v. Heidleback,* 109 Ala. 223.   The marriage was voidable at the suit of the deceived party.—26 Am. Rep. 197; 79 Am. St. Rep. 358 and note.

WHATLEY & CORNELIUS, for appellee.   Under the facts in this case, there was not such a fraud perpetrated as to amount to that legal fraud that would authorize an annulment of the contract.—1 Day 111; 14 Cyc. 595; see also Fraud in A. & E. Enc. of Law, p. 510.

SIMPSON, J.—The bill in this case was filed by the appellant, seeking to have the marriage between herself

and the respondent, said H. J. Johnson, annulled, on the ground that he, having seduced her before marriage, married her with the fraudulent purpose of afterwards abandoning her, intending thereby to prevent her from being a witness against him on an indictment or prosecution for seduction, though it is not stated that any such proceedings were in progress. The bill alleges that said H. J. Johnson lived with her for four days after the marriage and then abandoned her.

Appellant contends that the marriage contract, like any other contract, may be declared void and of no effect if procured by fraud; but, even as to any other contract, a court would not declare it null and void because one of the parties did not intend to fulfill his part of the obligations of the contract. Even in the states where fraud is, by statute, made a ground for divorce, it must be "in a matter essential to the validity of the marriage itself."—14 Cyc. 595.

There are cases which hold that fraudulent statements as to a material fact, by which the marriage was obtained, justify the annulment of the marriage, though there are cases to the contrary.—Nelson on Divorce and Separation, pp. 581-583.

But even if we were to admit that doctrine, there was no misrepresentation as to the existence of a material fact in this case. The complaint goes merely to the intention to carry out the obligations of the contract, in good faith, and he did live with her for four days after the marriage. The marriage was legal, and thereby her child was legitimated, and he became liable to the obligations of a husband, and subject to the statutory penalties for failing in such obligations.

The Supreme Court of Connecticut very maturely considered a case analogous to this at an early day, in which it was alleged that the man had married the

woman while proceedings for bastardy were in progress, for the purpose of avoiding said process, with the fraudulent and wicked design of immediately leaving her, and that he did do so. Under the statute of that state, "fraudulent contract" was mentioned as one of the causes for divorce; yet the court said: "It cannot be pretended the contract of marriage in this case was void ab initio, though the sole intention of the man in entering into it was to avoid the process under which he lay. He might have become of a better mind, and have faithfully performed the duties of a husband, in which case there could have been no doubt of the validity of the marriage, however apparent his fraud might be at the moment of solemnizing it. A marriage void ab initio is a marriage contracted in fraudem legis, and cannot be made valid by the volition of either or both of the parties." It was accordingly held that the marriage was not a fraudulent contract, within the meaning of the statute, and the divorce was denied.—*Benton v. Benton,* 1 Day (Conn.) 111, 115, 116.

The decree of the court is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.