2 So.2d 443
## HYSLOP v. HYSLOP.
I Div. 146.

Supreme Court of Alabama.
May 15, 1941.

Walter F. Gaillard, of Mobile, for appellant.

Arthur Hyslop, pro se.

BOULDIN, Justice.

Bill in equity by appellant to nullify her marriage with appellee on the ground of fraud.

The bill avers, and the evidence discloses:

The parties, residents of Mobile, both of full age, having known each other for two weeks, drove in an automobile over to Pascagoula, Mississippi, and were joined together as husband and wife through a marriage ceremony performed by a Justice of the Peace. Promptly thereafter they started on their return trip, some forty-five miles, and while en route the respondent informed complainant that he had acted hastily and prematurely and without realizing the consequences of the marriage ceremony, that he could not and would not carry out his marital vows; that he did not love her enough to go through life, etc. On arrival at Mobile he took her to her home and left for his. They had no intercourse, have never cohabited. Complainant was ready and willing to enter into the marriage relation. There was no lawful obstruction to the marriage. This bill was filed six weeks later. Respondent, by answer, interposed a general denial; offered no evidence.

The trial court, in an opinion expressive of his reasons for denial of relief, said: "The complainant here contends that the marriage contract may be declared void and of no effect if procured by fraud; but even as to any other contract, the court would not declare it null and void because one of the parties did not intend to fulfill his part of the obligation of the contract. Even in the States where fraud is by statute made a ground for divorce, it must be in a matter essential to the validity of the marriage itself."

This statement is taken in its entirety from Johnson v. Johnson, 176 Ala. 449, 450, 58 So. 418, 39 L.R.A.,N.S., 518, Ann. Cas.1915A, 828.

What is there said as to other contracts not being avoided for fraud on the ground that one of the parties did not intend to perform, is inaccurate.

By a long line of decisions in this State it is firmly settled that if one party is induced to enter into a contract in reliance upon a promise of performance on the part of the other made with no intention to perform, this is a fraud and deceit on the part of the latter, furnishing

grounds for rescission at law or in equity, as the case may be. Schwab v. Carter et al., 226 Ala. 173, 145 So. 450; Zuckerman v. Cochran, 229 Ala. 484, 158 So. 324, and many authorities there cited.

What was said in the case of Johnson v. Johnson, supra [176 Ala. 449, 58 So. 419, 39 L.R.A.,N.S., 518, Ann.Cas.1915A, 828], is to be taken in the light of the facts in that case, as disclosed further on in the opinion, saying: "The complaint goes merely to the intention to carry out the obligations of the contract, in good faith, and he did live with her for four days after the marriage. The marriage was legal, and thereby her child was legitimated, and he became liable to the obligations of a husband, and subject to the statutory penalties for failing in such obligations."

This Johnson case was differentiated in the later case of Raia v. Raia, 214 Ala. 391, 392, 108 So. 11; a nullity suit in equity by a young girl who refused to enter upon the marital relation after the ceremony was performed, and returned to her father's home. The details of overreaching and deceit on the part of respondent in the Raia case are best gathered from a reading of that opinion.

██ Said the court: "The facts averred show that the marriage was procured by and through the fraud perpetrated by appellant upon appellee, and brought the case within the doctrine enunciated by the courts to the effect that a marriage procured by fraud of such character as to go to the essence of the marriage and affect the free conduct of the injured party may be annulled, provided application for annulment be made before the consummation of the marriage by voluntary cohabitation."

Again:

"As fraud vitiates other contracts there is no logical reason why it should not vitiate the marriage contract under the averments of the instant bill. The New Hampshire court, in the case of Gatto v. Gatto, 79 N.H. 177, 184, 106 A. 493, 497, said:

" 'The public policy of this state, evidenced by the statutes, the decisions, or the general consensus of opinion, does not regard a fraudulent marriage ceremony as sacred and irrevocable by judicial action; it does not encourage the practice of fraud in such cases by investing a formal marriage, entered into in consequence of deceit, with all the force and validity of an honest marriage. While marriage is a contract attended with many important and peculiar features in which the state is interested, and while it is one of the fundamental elements of social welfare, its transcendent importance would seem to demand that wily and designing people should find it difficult to successfully perpetrate fraud and deceit as inducements to the marriage relation, rather than that such base attempts should be regarded as of trivial importance and be wholly disregarded by the courts. Unhappy and unfortunate marriages ought not to be encouraged. Sch. Dom. Rel. § 24. The successful perpetration of fraud is not deemed to be a subject for judicial encouragement.' "

See, also, Farley v. Farley, 94 Ala. 501, 504, 10 So. 646, 33 Am.St.Rep. 141.

Mr. Bishop, eminent authority on the subject of Marriage and Divorce, clearly distinguishes between an executory contract to get married; a ceremonial marriage wherein each vows to here and now take the other to be husband and wife; and a consummated marriage by entering into the marital relation in fact, the abiding status wherein the great social, moral and economic ends of marriage are attained. Bishop on Marriage and Divorce, Book 1, §§ 9 to 14.

Dealing with nullity suits, rather than suits to dissolve the bonds of matrimony, he says: "Though marriage becomes valid before consummation, still the non-consummated status, wherein unborn children and the community have not yet acquired the specially grave and weighty interests, is very different from the consummated one. So that no principle appears—not now inquiring how the authorities are —which would justify a court in refusing to pronounce void the non-consummated marriage for ordinary fraud."

Well considered cases, dealing with facts quite similar to this case, are Millar v. Millar, 175 Cal. 797, 167 P. 394, L.R.A. 1918B, 415, Ann.Cas.1918E, 184; Anders v. Anders, 224 Mass. 438, 113 N.E. 203, L.R.A.1916E, 1273. See, also, 38 C.J. p. 1300.

██ It is to be kept in mind that a ceremonial marriage, performed pursuant to license issued by lawful authority, and solemnized by one lawfully authorized, is not void, but voidable. The record of such marriage is conclusive evidence the parties are husband and wife, until death shall sever the relation, unless and until such marriage is avoided by a nullity suit, or

226

the bonds of matrimony dissolved by divorce. Owen v. Coffey, 201 Ala. 531, 78 So. 885.

■ Few, if any, kinds of fraud or trickery will warrant a nullity suit, after the marital status is actually entered upon by cohabitation and marital intercourse has intervened.

■ But, following the lead of our case of Raia v. Raia, supra, supported by sound reason and authority, we are of opinion that entering into the marriage covenant by ceremonial marriage is an express declaration of a purpose to fulfill the marriage vows; that, if done with intent not to perform, followed by immediate disavowal and refusal to perform, the party is guilty of fraud which goes to the essence of the marriage relation; and no public policy denies the wronged party relief by a nullity suit.

We do not conceive the short period of courtship is important here. Respondent was the older of the two. There is no pretense he was under duress or other pressure to excuse his act.

Courts could not well define a period of courtship between adults which could figure in such suits.

■ The refusal to enter upon the marriage relation shown here supports a fair inference that respondent's vows were taken without any bona fide purpose to keep them.

The decree of the court below is reversed and one here rendered granting the relief prayed by the bill, including restoration of complainant to her maiden name.

Reversed and rendered.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.