23 So.2d 605

### SMITH v. SMITH.

7 Div. 835.

Supreme Court of Alabama.
July 26, 1945.

Rehearing Denied Oct. 25, 1945.

W. D. DeBardelaben, of Anniston, for appellant.

216

Merrill, Merrill & Vardaman, of Anniston, for appellee.

THOMAS, Justice.

The appeal is from a decree of annulment of marriage.

The appellant concedes the truth of the first aspect of the bill of complaint as last amended, that she married the appellee in Cedartown, Georgia, within sixty days following the granting of a divorce in her favor from her former husband, Kenneth O. Chesser. She further concedes, in view of the case of Brand v. State, 242 Ala. 15, 6 So.2d 446, that this ceremonial marriage was void, although at the time of the consummation of the same she did not know that her marriage to the appellee was illegal; that is, she concedes that it was void due to the fact that it was consummated within sixty days after the granting of a divorce in her favor from her former husband, Kenneth O. Chesser.

In support of assignment of errors 1 and 2, appellant insists that although her ceremonial marriage be void, nevertheless, she became the lawful wife of appellee through a common-law marriage, and was such lawful wife at the time of the filing of the original bill of complaint in this cause, previous thereto, and still is at this time. The appellant in her answer to the original bill of complaint admitted that she married the appellee in Cedartown, Georgia, on November 9, 1942. Upon oral examination before the court, she testified in substance as to the common law marriage feature of this case, that within two weeks following the marriage of the appellant and the appellee, the appellee was inducted into the army; that during the two weeks immediately after the marriage of the appellant and appellee, and before his induction into the army, they lived together in Anniston, Alabama, and slept in the same bed; that upon the induction of the appellee into the army, he was first stationed at Fort Bragg, North Carolina, and that she did not accompany him there. The appellant further testified that after the appellee was inducted into the army, he first returned to Anniston, Alabama, in July, 1943, on a furlough from the army, at which time he stayed two weeks; that during this period in July, 1943, the appellant and appellee slept in the same bed as husband and wife, and during this time had sexual intercourse on several different

occasions; that during July, 1943, the appellee held the appellant out to the public as his wife; that during this period of time, they went several places together; that they went to see all of the people of the appellee, and he, on these occasions, held out the appellant as his wife, and that they went to the movies several times during this time; that when the appellee was in Anniston in July of 1943, he never questioned their marriage at all; and that she did not know anything about the appellee questioning their marriage until the proceeding for annulment of the marriage came up. The appellant further testified that she is getting an allotment from the government on account of her marriage to the appellee; and that the appellee told the appellant that he was tired of having an allotment paid to her, and that he wanted to have it discontinued, and that is the reason he wanted an annulment of the marriage.

With reference to the common law marriage feature of this case, the appellee testified in substance that when he was in Anniston, Alabama, on furlough in July, 1943, he slept in the same bed with the appellant on one or two nights, but absolutely had no marital relations with her, and that he had not seen her since July of 1943; that the last time he had sexual intercourse with the appellant was on November 22, 1942, the night before he went into the army the next day; that he first learned their marriage was illegal on the 10th of October, 1943, or about that time; that upon his last visit to Anniston in July, 1943, he saw the appellant on several occasions, but soon discovered that she did not love him or ever want to live with him again, and all she wanted was the allotment she was getting from the government; and that on this occasion he did not have any sexual relations with her and did not live with her as her husband.

Relative to the common law marriage feature of this case, it was observed in Hill v. Lindsey, 223 Ala. 550, 137 So. 395, 397, "It is the well-settled rule that if parties in good faith marry when in fact a legal impediment exists to their marriage, and they continue to cohabit as man and wife after the removal of the impediment of their lawful union, the law presumes a common-law marriage." To like effect is Prince v. Edwards, 175 Ala. 532, 57 So. 714, 715.

It is established in this jurisdiction that, "Where parties who are incompetent to marry enter an illicit relation, with a manifest desire and intention to live in a matrimonial union, rather than in a state of concubinage, and the obstacle to their marriage is subsequently removed, their continued cohabitation raises a presumption of an actual marriage immediately after the removal of the obstacle, and warrants a finding to that effect." Prince v. Edwards, supra.

"The decisions are that marriage may be contracted in this state by parties competent to so contract without ceremony or solemnization, by mutual and actual agreement and consent by the parties capable in law to that marriage relation, permanent and exclusive of all others, followed by cohabitation as man and wife and their mutual assumptions openly of marital duties and obligations." Rogers v. McLeskey, 225 Ala. 148, 142 So. 526, 527.

In the last cited case it was further held that the conduct and declarations of the cohabiting parties during the time are admissible as a part of the res gestae of the cohabitation, and illustrate the intention and act of the parties so cohabiting to be husband and wife, and that abandonment by the husband after common law marriage did not change the relationship of that as husband and wife.

No particular words or formalities are required to constitute a common law marriage in the State of Alabama. "To constitute such a marriage it is only necessary that there should be a mutual consent between the parties to be husband and wife, followed by cohabitation and living together as man and wife, and upon the establishment of such relation there is a lawful marriage, in this state, without regard to what the parties consider the legal effect of such relation to be." White v. White, 225 Ala. 155, 142 So. 524, 525.

At the time of the marriage in question, it is admitted that a legal impediment existed, to wit, that sixty days had not elapsed since the granting of the divorce in favor of the appellant against her former husband, Kenneth O. Chesser. However, after the running of the sixty days' restriction in the Chesser divorce decree, the impediment for a lawful marriage was then removed, and under the law the appellant was permitted to again contract marriage, which she could do either ceremonially or through the medium of a common law union. The impediment having been removed, as was shown in this case, the acts and doings of the parties subsequent thereto, to

wit, in July, 1943, several months after the removal of the impediment, clearly evidence the fact that these two persons considered themselves as husband and wife. Although some of the evidence as to the acts and doings of the parties subsequent to the removal of the impediment is in conflict, the burden of proof resting on the appellant to establish the common law marriage she asserted through her answer in the pleadings has been met. It was shown that they lived together in Anniston, that they went out together to visit friends and relatives; that they slept together, and appellee held appellant out to the public as his wife, without objection on the part of the appellant.

It must be borne in mind that both the appellant and the appellee are cast in the category of young people, and it is the necessary and reasonable conclusion to be reached that they engaged in sexual intercourse during July, 1943, in Anniston, Alabama, even assuming the truth of the appellee's testimony that they only slept together for one or two nights. There is no evidence that either of the parties was sexually deficient. Judging the case at hand by the necessary elements that must be present to constitute a common law marriage, as enunciated in White v. White, 225 Ala. 155, 142 So. 524, and Rogers v. McLeskey, 225 Ala. 148, 142 So. 526, referred to hereinabove, there can be no doubt that the parties were husband and wife at the time of the filing of the original bill of complaint.

■■ It is shown without dispute that in July, 1943, appellant and appellee slept together in the same bed for one or two nights in Anniston, Alabama, when appellee was on furlough from the army and this is evidence of the fact that they considered themselves to be husband and wife. There is nothing to show that this cohabitation was not voluntary. The appellee stated he does not love appellant, and that he found during the month of July, 1943, upon his visit to Anniston, Alabama, that appellant does not love him, but he did not discover the illegality of the marriage in Cedartown, Georgia, until October 10, 1943. When appellee left Anniston, Alabama, in July, 1943, he did not intend to return to live with the appellant. Nevertheless his acts and doings during the month of July, 1943, as heretofore indicated, brought into being the common law marriage in question, and any abandonment by him as the husband after the consummation of the common law marriage did not change the relationship he bore to appellant as her husband. Rogers v. McLeskey, 225 Ala. 148, 142 So. 526. During July, 1943, the appellee, according to the evidence given by the appellant, introduced the appellant to various persons as his wife. These declarations alone lend support to the fact that the parties intended to be husband and wife, and illustrated their intention and act to be husband and wife. Rogers v. McLeskey, supra.

In support of assignments of error 1 and 3, appellant says that, in event the court should disagree with the contention above and hold there was fraud as charged in the original bill of complaint, as first amended, concerning the concealment of the appellant from the appellee of her inability to bear children for him, there is no proof that the appellant was unable to bear children. The testimony on this point is to the effect that the appellant and appellee had never been examined by a medical doctor to determine their procreative powers; that is, their power to produce children. Therefore, it cannot be conclusively said with whom the fault lies for failure to produce children.

■ Assuming, as contended by appellee, that the appellant knew that she could not bear children and that she concealed this fact from the appellee when she knew that appellee wanted children, to constitute fraud perpetrated upon the appellee by the appellant, which the appellant denies, this marriage is still not legally subject to annulment on this ground in view of our cases of Hyslop v. Hyslop, 241 Ala. 223, 2 So.2d 443, and Raia v. Raia, 214 Ala. 391, 108 So. 11.

■ Appellee urges the validity vel non of the decree of divorce in the case of appellant and her former nonresident husband, brought in by service of publication and by posting at the court house. The question may be raised collaterally, and this is done on the instant pleading, and by argument of appellee's counsel. Ex parte Edwards, 183 Ala. 659, 62 So. 775; Ingram v. Ingram, 143 Ala. 129, 42 So. 24, 111 Am. St.Rep. 31. The general authorities on the subject are noted in 99 A.L.R. 1312, 1317; 17 Amer.Juris. § 480, p. 391.

Did the Circuit Court of Calhoun County have jurisdiction in the former suit for divorce by appellant against her former husband, as averred in the bill and in the affidavit alleging defendant to be a nonresident? That suit is governed by the rules

that obtain in Code 1940. The cases of Anthony v. Anthony, 221 Ala. 221, 128 So. 440; Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820, 821, were prosecuted to appeal under the former equity rules set out in the Code of 1923, §§ 9450, 6535; Equity Rule 22, Vol. 4, p. 914, Code 1923. It is held that the record should show with particularity the publication and posting rule was observed in order for the court to obtain jurisdiction of the person. The bill and affidavit in the case of the decree challenged by the instant appeal show that he was a nonresident, and that the place of his residence and post office address were unknown. Code 1940, Tit. 7, Appendix, Equity Rule 6, p. 1044; Rule 32, p. 1076.

In the instant case the reporter will set out the affidavit of nonresidence, the publisher's certificate of publication and the decree pro confesso entered by the register, and not by the trial judge. The order of August 11, 1942 of publication found in the record is not signed by the register, but the decree pro confesso entered by the register contained the recital of fact of service by publication and posting, stating particularly what and how publication was had, as required by the rule that obtains. Equity Rule 32, Code 1940, Tit. 7, Appendix, p. 1076, provides that no decree pro confesso can be rendered on notice by publication until the register makes and files such certificate.

Prior to the adoption of the new rules of equity, we had held that when the register makes a decree pro confesso which contains the recitals his certificate must contain, it was a compliance with the then existing rule. Code 1923, p. 916, Rule 29; Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 821; Phillips v. Ashworth, 220 Ala. 237, 124 So. 519; Cashen v. Baggett, 233 Ala. 122, 170 So. 201.

■ We notice a difference in the language of the present Rule 32 and the old Rule 29. In the latter it was provided that when application is made to the chancellor for a decree pro confesso, there must be a certificate of publication made by the register before the chancellor shall enter the decree. That was necessary for the chancellor's information. Present Equity Rule 32 has such broad terms that it could be interpreted to mean that neither the chancellor nor the register shall enter a decree pro confesso without such certificate by the register. But this rule should have a reasonable construction so as to promote its

purpose and not make it require useless repetition. If the register who has personal knowledge of when and how the publication was made makes the recital of that requirement in the decree pro confesso, it is not only such a decree, but it is also a certificate by him of the facts so recited, and is a sufficient compliance with Rule 32 as it now appears in Code 1940, supra.

■ We have examined the record and evidence as to the jurisdiction of the subject matter in appellant's former suit for divorce and find no failure in that respect. Ray v. Ray, 245 Ala. 591, 18 So.2d 273; Harris v. Harris, 230 Ala. 508, 162 So. 102; Murray v. Murray, 238 Ala. 158, 189 So. 877; Jones v. Jones, 189 Ala. 286, 66 So. 4.

■ The bill was timely filed. Johnson v. Johnson, 245 Ala. 145, 15 So.2d 401. It is without merit as to the challenge of jurisdiction of the subject matter or of the person in the former suit.

It results that the decree of the circuit court annulling the marriage between appellant and appellee is in error and should be reversed.

Reversed and remanded.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.

On Rehearing.

FOSTER, Justice.

■ We think that in the opinion set out above we gave undue consideration to what appears in the record as an order for publication not signed by the register. We did not duly consider at that time the testimony of the register in connection with that instrument. His testimony is admissible on collateral attack to show whether or not the court acquired jurisdiction of the person of the defendant to support a decree of divorce based upon a decree pro confesso. Ex parte Griffith, 209 Ala. 158, 159, 160, 95 So. 551. The testimony of the register shows that such instrument was not his act; that he did not sign or file nor approve it as his own, and that it was placed in the file by complainant's counsel. We cannot give consideration to it under those circumstances.

■ But the register did sign and file an instrument which we think may be liberally termed an order of publication. That instrument was the act of the register, and it was duly published and posted as re-

quired by Rule 6, Chancery Practice. It was supported by a sufficient affidavit showing that the residence of the defendant was unknown, and therefore that it was not necessary to mail him a copy of it, and respondent in that suit is not here complaining, and has taken no steps to set it aside. We are committed to the principle that the requirements of Rule 6, Chancery Practice, are mandatory. Anthony v. Anthony, 221 Ala. 221, 128 So. 440; Wilkerson v. Wilkerson, 230 Ala. 567, 161 So. 820. But the construction placed upon that rule should not be so strict and literal as to annul a decree when its essential features have been met.

When the register makes an order of publication, it is predicated upon an affidavit containing the essential facts which justify the order. An order so made upon the basis of that affidavit is a ministerial and not a judicial act of the register. McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 51 A.L.R. 731; Cummings v. Brown, 181 Mo. 711, 81 S.W. 158; 50 Corpus Juris 528, note 35. The order is part of the process, and does not have to be recorded on the minutes of the court, Cameo Realty Corp. v. Long, 101 Fla. 277, 134 So. 47, and is not within the requirements of Rule 90, Chancery Practice.

The instrument may be called an order if it impliedly requires the defendant to act and the use of any particular word or form of words is not necessary in order to designate it as an order, and no form is prescribed by the rule. If it informs the defendant that a suit has been instituted against him by a named party in a certain court of a certain county, and that unless he appears and makes defense against it within a certain time or by a named date a decree pro confesso will be entered against him after a certain time, it should properly be designated as an order as well as a notice. It contains a requirement as to what the defendant should do and that is in the nature of an order, and it contains all of the essential features of Rule 6, Chancery Practice, except that it does not name the paper in which the order is to be published, and the rule so directs.

But we think that it is an unsubstantial omission not sufficient to strike down the decree of the court based upon the decree pro confesso by the register showing a due publication of the notice and order. In fact there is authority so holding. 50 Corpus Juris 529, § 182, p. 532, note (c); Kane v. McCown, 55 Mo. 181.

We have therefore reached the conclusion that the instrument signed by the register and published should properly be designated an order within the meaning of Rule 6, supra, and that it is such a compliance with that rule as will sustain the jurisdiction of the court rendering the decree of divorce upon a decree pro confesso properly rendered by the register.

It is also claimed that the bill fails to allege a statutory ground for divorce, and therefore that the court is without jurisdiction. This is a collateral attack, and so considered we think the bill is sufficient to invoke jurisdiction as against that attack. We do not think an enlargement is necessary.

The application for rehearing is therefore overruled.

GARDNER, C. J., and THOMAS, LIVINGSTON and STAKELY, JJ., concur.

BROWN and SIMPSON, JJ., dissent.

BROWN, Justice (dissenting).

I cannot agree that the notice published in the case of Chesser v. Chesser is an order of publication required by Rule 6 of Equity Practice. It nowhere appears in said notice that the defendant is a nonresident and cannot be aided by the affidavit because the affidavit was not published. The rule requires, "The order against such defendant shall require him to answer or plead *to the bill of complaint* or petition before a day to be therein named, not less than thirty days nor more than fifty days, from the making thereof." [Italics supplied.] Code 1940, Tit. 7, Appendix, Equity Rule 6, p. 1044. The proof of publication shows that the notice was published four times, the last being on the 4th day of September, 1942; and the notice required him to plead within ten days from that date. Said notice does not show what the defendant is required to plead to and it cannot be assumed that a layman is familiar with legal terminology such as "decree pro confesso." It is well settled that statutes and rules of practice prescribed by the courts in respect to notice by publication which constitute substituted service must be strictly complied with. The authorities are collected in 3 Mayfield's Digest, pp. 362-365, where numerous authorities are cited, among others Paulling's Adm'rs v. Creagh's

Adm'rs, 63 Ala. 398; Diston & Sons v. Hood, 83 Ala. 331, 3 So. 746; Meyer v. Keith, 99 Ala. 519, 13 So. 500. See also Partlow v. Partlow, 246 Ala. 259, 20 So.2d 517.

I am not able to agree with the majority that this "short form" of notice meets the requirements of due process of law and, therefore, respectfully dissent.

SIMPSON, J., concurs.