UNITED STATES, Appellant

v.

ROBERT D. RICHARDSON, Private First Class,
U. S. Army, Appellee

1 USCMA 558, 4 CMR 150

560

LT. COL. Paul J. Leahy, USA, and 1ST LT. Richard L. Brown, USA, for Appellant.

LT. COL. Stewart H. Legendre, USA, and 1ST LT. Bernard Landman, Jr., USA, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was tried by general court-martial[1] on two charges. Charge I alleged absence without leave from July 10, 1951, to July 16, 1951. Charge II covered two specifications, the first alleging that on July 9, 1951, at Hot Springs National Park, Arkansas, the accused took immoral and improper liberties with one Clarene Burch, a female under 16 years of age; and the second alleging the commission of a similar offense at Florence, Alabama, from July 10, 1951, to July 16, 1951.

The facts and circumstances which gave rise to this prosecution are as follows: Accused was a patient in the Medical Holding Detachment, Army and Navy General Hospital, Hot Springs National Park, Arkansas. Three or four weeks prior to July 9, 1951, he had become acquainted with Clarene Burch, a girl 15½ years of age. They had been out together on two or three occasions, and she had twice visited him at the hospital. At about 10 o'clock on the night of July 9th, accused met Clarene to escort her home from Whittington Park in Hot Springs where she was employed. On the way home they stopped at a park and accused attempted to have intercourse with her but he was unsuccessful because of her objections. He then asked that she marry and leave with him. According to accused she agreed so they went to a hotel in Hot Springs, where he registered them as

Mr. and Mrs. Richardson. They spent the night in the hotel, sleeping in the same bed. At about 6 o'clock p.m. the following day they boarded a bus for Florence, Alabama, using tickets purchased with the girl's money, and travelled to accused's home which was located in that city, where they visited with his mother and sister. Accused introduced the girl to his family as his wife, they occupied the same bed, and represented themselves at all times to be husband and wife. On July 16th, at the request of the girl's father, the accused and Clarene were apprehended by civilian authorities, the girl being returned to her home in Hot Springs and the accused to military control.

At the commencement of the trial, immediately after the reading of the charges and specifications, counsel for the accused moved that the second charge and the specifications thereunder (taking improper and immoral liberties) be dismissed, contending that the accused and the girl named therein were husband and wife by reason of a common-law marriage entered into in the state of Alabama. The court was closed, evidence was presented, and the motion was argued before the law officer out of the hearing of the court-martial members. Both accused and the girl testified as to their activities during the period between July 9th and 16th. After the arguments the law officer reopened the court, and denied the motion. Thereupon accused entered a plea of guilty to the offense of going absent

---

[1] CM 348276

**561**

without leave and pleas of not guilty to Charge II and the included specifications.

After a trial on the merits, accused was found guilty of going absent without leave; guilty of the second charge and the first specification thereunder, which pertained to the acts committed in Arkansas; and not guilty of the second specification, which involved the acts in Alabama. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for two years. The convening authority reduced the period of confinement to one year, suspended the dishonorable discharge until accused's release from confinement, and approved the findings and sentence as amended.

The board of review in the office of The Judge Advocate General of the Army held that the finding of not guilty on the second specification of the second charge constituted a finding by the court-martial that accused and the girl had consummated a common-law marriage in Alabama; that the testimony given by the girl as to the first specification was privileged because of the marital relationship existing between the parties; that the privilege was not waived by accused's failure to claim it since the previous ruling of the law officer on the motion to dismiss made such action futile; and that the law officer committed error in failing to instruct the court that if they found the existence of a common-law marriage between the accused and Clarene Burch, they should consider her testimony as being privileged. Accordingly, the board approved only such findings and portion of the sentence as applied to the offense of absence without leave.

The Judge Advocate General of the Army has certified six questions to this Court. These are: (1) Is the record of trial sufficient in law to establish the existence of a common-law marriage between accused and Clarene Burch? (2) Did the law officer prematurely entertain and improperly consider and determine the defense motion to dismiss, which included a determination of a factual defense issue requiring evidence? (3) Was the denial of a motion to dismiss such a ruling rejecting the common-law marriage assertion that thereafter the defense was excused from objecting to Clarene Burch's testimony as privileged on the ground that such objection had been demonstrated to be.a futile move? (4) Was the failure to object to Clarene Burch's testimony on the ground of privilege a waiver of accused's privilege, if any, against the use of Clarene Burch as a witness against him by reason of the alleged common-law marriage? (5) Was the law officer's failure to instruct the court with respect to accused's privilege, if any, against the use of Clarene Burch as a witness against him prejudicial error? (6) Was the finding of not guilty of Specification 2 of Charge II a conclusive determination of the existence of a status of common-law marriage which would have entitled the accused to a privilege against Clarene Burch's· testifying as to Specification 1 of Charge II?

We first dispose of the procedural question involved in the law officer's consideration of the motion to dismiss even though we are reluctant to answer inquiries when both counsel for the Government and the accused concede that neither party was prejudiced by the ruling. However, to assist law officers in future cases, we shall express briefly our views on the correct procedure.

In the military judicial proceedings, the law officer acts in a capacity similar to that of a judge in civilian practice. Under Article 51(b), Uniform Code of Military Justice, 50 U.S.C. § 626, he is required to rule upon preliminary questions, other than (1) challenges which may arise during the proceedings, (2) motions for findings of not guilty, or (3) questions of the accused's sanity.

Paragraph 67(a) Manual for Courts-Martial, United States, 1951, page 96, provides as follows:

"*a. Defenses and objections which may be raised.*—Any defense or objection which is capable of determination *without trial of the issue raised by a plea of not guilty* may be raised before trial by reference to the con-

vening authority, or by motion to the court before a plea is entered. . . .

"Defenses and objections such as that trial is barred by the statute of limitations, former jeopardy, pardon, constructive condonation of desertion, former punishment, promised immunity, lack of jurisdiction, and failure of the charges to allege an offense should ordinarily be asserted by motion to dismiss before a plea is entered; but failure to assert them at that time does not constitute a waiver of the defense or objection. . . ." [Emphasis supplied].

This section is in part amplified by Paragraph 67(g) which provides as follows:

"g. *Inadmissible defenses and objections.*—Such objections as that . . . are not proper subjects for motion prior to plea, however much they may constitute ground for a continuance or affect the questions of the truth or falsity of the charge or of the measure of punishment. *The same is true in general as to objections that are solely matters of defense under a plea of not guilty and, in effect, merely contest the truth of the allegations of a charge."* [Emphasis supplied].

The touchstone for determining this particular question is whether the motion to dismiss involved an interlocutory question or whether it raised solely a matter of defense under a plea of not guilty. As we view the substance of the motion, it was inappropriate because it required a finding on one of the principal elements of the defense and in legal effect was a motion for a finding of not guilty, apparently based on the concept that a husband is not guilty of taking immoral and improper liberties with his wife by placing his hands on her person. The appropriate time to make this type of motion is after the taking of evidence has been completed. The relationship of the parties determined the material part of the offense, and, as such, had to be considered by the court-martial in arriving at a finding. Clearly, if the parties were married, then accused had a good and valid defense to the alleged charge. If they were not, then a finding of guilty would be in order assuming proof of the other necessary facts. If the proceedings adopted by the law officer were for the purpose of making this determination then he invaded the province of the court-martial on a matter, and by holding in favor of the accused he could have precluded it from reviewing his ruling. This is expressly prohibited by the Code as upon objection by any member, the court-martial is required to vote on a finding of not guilty.

There is, however, another problem which was to confront the law officer and that was the competency of Clarene Burch to testify. If the parties were married, the accused could claim a privilege against his wife testifying. A determination of the relationship for this purpose is an interlocutory question and one which should be ruled on by the law officer. He could not possibly rule on the question of whether accused was entitled to claim privilege until he had determined the status existing between the accused and the witness. Perhaps the best procedure would have dictated that he await the time the question was raised by defense counsel. However, it sometimes expedites the trial of cases to adopt a procedure which permits all preliminary or interlocutory questions based on out-of-court testimony to be determined before the trial on the merits commences. We see nothing erroneous with a law officer hearing evidence outside the presence of members of the court prior to trial for the purpose of being prepared to rule on anticipated questions of law. He should not, however, rule on questions which are to be subsequently determined by the court. If he does and he overrules the motion, the court-martial does not have the evidence before it for consideration, and if he grants the motion serious doubt arises concerning a subsequent trial of the accused.

We, therefore, conclude that while the procedure adopted by the law of-

ficer might not have been the best, it was not entirely without justifi- ██ cation. In view of this, and his overruling of the motion, his actions were not prejudicial.

The difficult problem in this case is raised by the first certified question which is: Whether the record establishes the existence of a marital relationship between the accused and Clarene Burch. The principles of law controlling are fairly well established but the short duration of the period of cohabitation makes their application troublesome. Rather than a long and well established relationship we are faced with a short and temporary affair. For this reason some of the factors helpful in establishing a common-law marriage are not present.

In military law, as in civilian, the validity of a marriage is determined by the law of the place where ██ it is contracted. If the marriage is valid by the lex loci contractus it will be held to be valid everywhere. See United States v. Aikins and Seevers (1949), 5 BR–JC 331, 363–364. Since the parties did not contract a ceremonial marriage, our discussion is limited to the principles governing common-law marriage. Here, two states are involved. The first, Arkansas, does not recognize any marriage contracted within its borders without ceremonial solemnization, although such marriages are valid in that state when contracted in a place where they are recognized. Furth v. Furth, 97 Ark. 272, 133 S. W. 1037. On the other hand, the law of Alabama, the second state involved, acknowledges the creation of a marital relationship without formal official or ecclesiastical ceremony. Kelly v. Kelly (1946), 247 Ala. 316, 24 So.2d 265. However, it is recognized there, as else- ██ where, that such marriages are not looked upon with favor by the courts, and where one is claimed to exist, the facts and circumstances upon which the claim is bottomed will be carefully scrutinized. 55 C.J.S., Marriage, § 6, page 818.

Under judicial decisions of Alabama, a reasonably clear and convincing picture of a stable and permanent marital

relationship must be portrayed by the evidence. Three essential ██ elements are required: (1) An actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others; (2) between parties capable of making such a contract; and (3) consummation by cohabitation or mutual assumption openly of marital duties and obligations. See Cavin v. Cavin, 237 Ala. 185, 185 So. 741; Gilbreath v. Lewis, 242 Ala. 510, 7 So. 2d 485; Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So. 2d 166; Campbell v. Rise, 245 Ala. 395, 17 So. 2d 162; Smith v. Smith, 247 Ala. 213, 23 So. 2d 605. The rule was stated by the Supreme Court of Alabama, in the case of Turner v. Turner, 251 Ala. 295, 37 So. 2d 186, in the following words:

"We stress that to constitute such marriage there must first have been a *present agreement* between a man and a woman, eligible to enter into such relationship, to take each other as man and wife; and then this must be followed by cohabitation or mutual assumption openly of marital duties and obligations. Keezer, Marriage and Divorce, 3rd Ed., Morland, p. 34, § 20; In re Price's Estate, 129 Fla. 467; 176 So. 492; authorities, supra."

If any one of the three elements is not established the claim that a common-law marriage exists must fail. Moreover, since these essentials are, in a sense, a substitution for the formalities required in a ceremonial marriage, no other fact or circumstance may take their place.

In assessing the evidence we shall apply the rule of careful scrutiny adopted by civilian courts. We ██ view this as being particularly essential in the light of the difficulties encountered by the military in dealing with the social problems created by removing young people from the restraining influences of their families, homes and acquaintances. We cannot, by our judgment, determine what relationship we might have found were we permitted to make the first determination; rather, we can only determine whether there is some evidence in the record to support the

564

finding made by the board of review that there was a common-law marriage. We, therefore, review the evidence solely for that purpose, and in doing so, we must view it in a light favorable to the finding made by the board of review.

We can formally dispose of the element relating to the competency of the parties. The age of consent under Alabama law is 14 years for a female, while that of a male is 17 years (Code of Alabama, 1940, Title 34, Section 4). The birth certificate of Clarene Burch established her age to be 15½ years. No direct evidence was offered concerning the age of the accused but this fact has not been placed in issue, probably because the allied papers show him to be over 21 years of age. There is no showing of an existing marriage of either party to a third person and no evidence which would indicate any other infirmity touching the parties' competency. Accordingly, this element is established.

The record is sufficient to support findings both as to cohabitation of the parties and to mutual assumption openly of marital duties and of obligations.

Used as a predicate for common-law marriage, cohabitation means something more than a mere sojourn or visit over the state line for purposes of convenience. It contemplates a continuous living together such as is usual between married persons, and it further contemplates that the parties have established or attempted to establish a common habitat. Here there is some evidence and reasonable inference to support a finding of these facts. Undoubtedly it is wanting in completeness but consideration must be given to the fact that the relationship was interrupted by the acts of outsiders and not by consent of the parties. Accused was a member of the armed forces and he had no well established residence other than the home of his mother. The only place the parties could have established any semblance of a home, without a more substantial income, would be with their parents or other relatives. The wife's previous home could hardly be considered as a possible place to live in light of her father's attitude. Under those circumstances the travel of the parties to Alabama was not necessarily for illicit purposes. It seems more consistent with the purpose to find a place to live. Moreover, after arriving in Alabama, the parties cohabited together in a manner comparable to other married persons and in the home of the accused's mother, which is not ordinarily a place where a boy would carry on an illicit relationship.

The evidence in the record to support the finding of assumption by the parties of the marital duties and obligations is found in the testimony of both parties that the accused introduced Clarene to his family and friends as his wife. Both considered themselves married and in such contacts as they had with the public held themselves out to be husband and wife. It would be contrary to ordinary human behavior for the accused to take Clarene to live with his mother and acknowledge her as his wife without intending to assume any of the marital duties and obligations of a husband. Here again the time element gives a certain amount of distortion to the true relationship but we do find in the evidence an acknowledgment of marriage by the parties, treatment of each other and speaking about each other in the presence of third parties as being in that relationship, and contribution of finances by both. The triers of fact found in favor of the accused on this element and we are not prepared to say that we can find as a matter of law that the facts and circumstances do not support the finding.

This brings us to consider the evidence touching on the contract of marriage. The authorities hold that the contract must embody an actual and present intent on the part of both parties to establish a permanent marital relationship. The exact words need not be established as the contract may be implied from the acts and conduct of the parties. The evidence establishes an agreement to marry. The point of dispute being whether it was in present or in future. The evidence lending credence to the former is as follows: The parties had known each other for approx-

imately one month prior to July 9, 1951. They had been out on several occasions and the accused had attempted to have sexual intercourse with Clarene. On these occasions he had been unsuccessful because of her unwillingness. On July 9 he met her at her place of employment and they proceeded from there to a public park. He attempted again to obtain her consent to have intercourse but she again refused. Thereafter he asked her to marry him and go to his home in Florence, Alabama. According to his version, which must have been accepted by the courts-martial, she agreed. They thereupon proceeded to a hotel where he registered them as Mr. and Mrs. Robert Richardson. They spent the night in the hotel as husband and wife and left the following day for his mother's home in Florence, Alabama. Clarene furnished the money to purchase the tickets. Upon their arrival in Florence they went to the home of accused's sister where he introduced Clarene as his wife and they stayed the remainder of the day. That night and until July 16, they stayed in the home of accused's mother, cohabiting as man and wife and informed their parents, relatives and others they were married. They remained at the home of the accused's mother until both were apprehended by civilian police on July 16, 1951. Upon apprehension, Clarene was returned to her home and the accused to military control but neither repudiated the contract of marriage.

It has long been the rule that it is not necessary to prove the exact wording of a marriage contract. It is sufficient if the facts of the case are such as to furnish satisfactory evidence that the contract was entered into. For this purpose the substance of the conversation of the parties, their acknowledgment, their conduct toward each other, the repute consequent upon it, their cohabitation, and holding out to the public of the relationship of husband and wife, may be sufficient to prove the marriage.

The testimony of the parties as herein related appears to sustain accused's contention that a contract for marriage was entered into; and that it was to take effect immediately. The court-martial had to either accept this version

566

or find that the parties intended to deliberately disobey the law. We believe the court-martial and the board of review gave accused the benefit of any doubt they entertained and this apparently is not without reason. When a man and woman are living together in apparent matrimony; when they advertise to their friends and relatives that they are husband and wife; when they act as if they are in fact married; and when they follow an agreement to marry by an immediate assumption of the marital obligations, we should not overturn a ruling in their favor by presuming they intended to violate the laws of society. While an independent appraisal of the evidence might lead us to a contrary result, we are required to affirm the holding of the board of review if there is evidence to support it. We have concluded there is.

We have not overlooked the principle contended for by the Government to the effect that the acts ██ and conduct of the parties in Arkansas were meretricious and a contract founded in illegality is void. This would be true if the illegality carried over into Alabama but such is not the case. We believe that after the impediment created by the law of Arkansas was removed, the parties could validate the agreement. In the case of Travers v. Reinhardt, 205 U.S. 423, 51 L. ed. 865, 27 S. Ct. 563, the United States Supreme Court held that assuming the invalidity of the marriage at the place where contracted, it could subsequently be made effective by continuing the relationship in a state which acknowledged common-law marriages. We quote from page 440 of that opinion.

"We are of opinion that even if the alleged marriage would have been regarded as invalid in Virginia for want of license, had the parties remained there, and invalid in Maryland for want of a religious ceremony, had they remained in that State, it was to be deemed a valid marriage in New Jersey after James Travers and the woman Sophia, as husband and wife, took up their permanent residence there and lived together in that relation, continuously, in good faith, and openly, up to the death of Travers—being regarded by them-

selves and in the community as husband and wife. Their conduct towards each other in the eye of the public, while in New Jersey, taken in connection with their previous association, was equivalent, in law, to a declaration by each that they did and during their joint lives were to occupy the relation of husband and wife. Such a declaration was as effective to establish the status of marriage in New Jersey as if it had been made in words of the present tense after they become domiciled in that State."

In the case of Hill v. Lindsey, 223 Ala. 550, 137 So. 395, the Supreme Court of Alabama appears to have followed the rule announced by the United States Supreme Court in the previously mentioned case. The Alabama Court had this to say with respect to a contract of marriage which was originally invalid:

". . . . It is the well-settled rule that if parties in good faith marry when in fact a legal impediment exists to their marrige, and they continue to cohabit as man and wife after the removal of the impediment of their lawful union, the law presumes a common-law marriage. . . ."

The evidence in the case at bar brings the parties under this rule. When the marriage agreement was made the parties intended to proceed to the State of Alabama and when they left the State of Arkansas, the legal impediment was removed. Thereafter they continued to cohabit as man and wife, held themselves out as having been married and publicly acknowledged the relationship. While a mere temporary sojourn in a state in which a common-law marriage is recognized may not be sufficient to create a common-law marriage, a different situation exists if the journey is for the purpose of establishing a domicile.

The final certified question we need answer deals with whether the accused waived his privilege against his wife testifying because he failed to challenge her competency.

The Manual for Courts-Martial, 1951, paragraph 154(d), page 297, has this to say about the waiver:

"The prosecution or the defense may in open court either orally or in writing waive an objection to the admissibility of offered evidence. . . . . There is no prescribed form for making a waiver. Thus, if it clearly appears that the defense or prosecution understood its right to object, any clear indication on its part that it did not desire to assert that right may be regarded as a waiver of the objection. However, a waiver of an objection does not operate as a consent if consent is required, and a mere failure to object does not amount to a waiver except as otherwise stated or indicated in this manual."

We are not disposed to hold there was any clear indication on the part of counsel for the accused not to assert the claim of privilege. The whole tenor of the proceedings points to a contrary constructon. The procedure adopted on hearing the motion to dismiss must have influenced the subsequent moves of counsel. Apparently the law officer, trial counsel and defense counsel considered the pre-trial ruling as conclusive on the question of marriage. The law officer specifically found against the accused and had a privilege been claimed, the same ruling was bound to follow. This, however, does not absolve counsel for the accused from preserving the record properly, and, when Clarene was called as a witness, he should have made an appropriate objection. We cannot stress too strongly the necessity of counsel trying cases properly. Yet, we cannot impose a penalty upon the accused simply because his counsel fails to require a second adverse ruling on a point of law. Having raised the question squarely and having been overruled, defense counsel cannot be saddled with any clear indication of waiving what he had indirectly contended for. Under the law officer's ruling, a privilege could not have existed and we assume a claim of privilege would have been summarily disposed of adverse to accused. We make this assumption for the reason that while no reason for denial of the motion appears, the only issue raised was whether there was a common-law marriage.

By answering the last question as

we do, we are forced to determine one other problem, i.e., whether ▌ the evidence is sufficient to sustain the finding of guilty of the alleged offense occurring in Arkansas. The court-martial found the accused guilty of the offense committed there and not guilty of a similar offense in Alabama. The offenses were identical with the exception of the locale and the finding was arrived at after inquiry by the court as to whether or not a marriage in Alabama would have a retroactive effect and bar the prior offense. From that it must follow that the court found a valid common-law marriage as the findings cannot be reconciled on any other possible basis. Assuming an offense in Arkansas, the only evidence to sustain it other than the pre-trial statement of the accused is the evidence of the wife. The Manual for Courts-Martial, United States, 1951, paragraph 148(e) provides that both husband and wife are entitled to a privilege prohibiting the use of one of them as a witness against the other. Had the law officer found a common-law marriage, he undoubtedly would not have permitted Clarene to testify. The court-martial and the board of review found a marriage existed prior to the time of trial so unless there was a waiver by the accused, the wife's evidence should not be considered. We have disposed of the question of waiver adversely to the Government's contention and, therefore, hold that the only evidence in the record tending to establish the offense in Arkansas is a pre-trial statement of the accused. This is not sufficient to sustain a finding.

We have considered the other certified questions and they have been answered or they are unnecessary to a proper disposition of this case.

The judgment of the board of review is affirmed.

·Chief Judge QUINN and Judge BROS-·MAN concur.